FIRST PLACE COMPUTERS, INC., APPELLANT, V.
SECURITY NATIONAL BANK OF OMAHA, NEBRASKA, APPELLEE.

558 N.W.2d 57

Filed January 17, 1997.   No. S-94-1080.

James R. Place, of Place Law Office, for appellant.

Myron L. Listrom, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

First Place Computers, Inc. (First Place), appeals from a summary judgment entered in the district court in favor of Security National Bank of Omaha, Nebraska (the bank). First Place brought suit against the bank, alleging that from September 1, 1988, through June 1989 the bank honored and paid several checks of First Place's that contained forged signatures, incomplete signatures, and unauthorized signatures, causing damages in the sum of $97,898.01. The bank answered, alleging that First Place's claim is barred by the provisions of Neb. U.C.C. § 4-406(4) (Reissue 1980) (now amended and codified at Neb. U.C.C. § 4-406(f) (Reissue 1992)). Section

4-406(4) places upon a bank's customer the duty of bringing to the bank's attention, within 1 year, any item containing an unauthorized signature which has been debited to the customer's account. There was also a contract between First Place and the bank that purportedly further restricted the time period in which an unauthorized signature must be reported to 60 days. This case requires us to decide whether § 4-406(4) should be construed as a statute of limitations rather than as a notice prerequisite to filing suit. We conclude that § 4-406(4) is a condition precedent that requires customer notice to a bank, within 1 year, as a prerequisite to filing suit. Because the evidence reveals that First Place did not discover and report the alleged unauthorized signatures to the bank within 1 year, we affirm the judgment of the district court.

## I. FACTUAL BACKGROUND

First Place was incorporated on August 2, 1988, by Douglas Ellsworth and Tom Adair and opened for business in the fall of 1988.

On July 20, 1988, Ellsworth and Adair opened a checking account for First Place at the bank. On July 21, Ellsworth and Adair signed a standard signature card at the bank. First Place asserts, and the bank assumes in its brief, that the signature card requires two signatures (i.e., Ellsworth's and Adair's) on each check presented for payment, even though the signature card in evidence contains no such requirement. The 155 checks at issue in this case include checks on which Ellsworth's signature is improper, checks which purport to bear the signature of Douglas E. Ellsworth but which Ellsworth claims are forgeries of his signature, and checks on which only one of the two "required" signatures appears.

The bank mailed statements and canceled checks to First Place within a week of the cutoff date each month. However, Ellsworth employed a bookkeeper, and he did not personally inspect the check register on a routine basis.

On June 15, 1989, Ellsworth found a check stub in the check register indicating that a large check (approximately $4,000) had been written to Adair that Ellsworth had not signed. Ellsworth went to the bank and met with an officer of the bank.

Ellsworth told the bank officer that he had not signed the check and did not want it to be honored. In addition, he voiced his suspicion that the problems had been going on for a period of time. The check to Adair was not paid and is not at issue in the instant case.

The following week, Ellsworth talked with the same bank officer about irregularities in the account; however, they did not discuss specific checks. At about this same time, the bank officer called Ellsworth to discuss a number of checks that had been "in the float"; Ellsworth indicated that he had not signed these checks. However, Ellsworth wanted the checks to be paid, and he signed the checks at that time.

Sometime in late 1989 or early 1990, Ellsworth brought in five or fewer checks that he had not signed but wanted honored; again, he signed the checks at that time. These checks are not at issue in the instant case. At no other time prior to 1992 did Ellsworth present checks to the bank claiming that signatures were improper. The first time that Ellsworth gave notice to the bank of any specific checks paid by the bank which contained forged or unauthorized signatures was when a list of checks prepared by Ellsworth and his attorney was given to the bank sometime after June 22, 1992.

The bank moved for summary judgment, asserting that § 4-406(4) and the contract between the parties precluded recovery by First Place and that there was no evidence of any damage to First Place. The district court sustained the bank's motion for summary judgment and dismissed the lawsuit. The district court found that there was no genuine issue of material fact to be resolved and that recovery was barred by First Place's failure to comply with § 4-406(4) and with the agreement between the parties.

## II. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Polinski v. Omaha Pub. Power Dist., ante* p. 14, 554

N.W.2d 636 (1996). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## III. ASSIGNMENTS OF ERROR

Summarized and restated, First Place asserts that summary judgment was improper in that the district court erred in (1) construing § 4-406(4) as a statute of limitations rather than as a notice prerequisite to filing suit, (2) determining that First Place had not provided the required notice to the bank, and (3) applying § 4-406(4) to checks on a two-signature account bearing only one signature.

## IV. ANALYSIS

### 1. DUTY TO DISCOVER AND REPORT

The Uniform Commercial Code provision in effect at the time of the cause of action reads:

> Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

§ 4-406(4).

Section 4-406(4) clearly places upon a bank's customer the duty of bringing to the bank's attention any item containing an unauthorized signature which has been debited to the customer's account. It " 'evidence[s] a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items.' " *Knight Communications v. Boatmen's Nat.*, 805 S.W.2d 199, 202 (Mo. App. 1991). See, also, 7 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 4-406:1, comment 7 (rev. 3d ed. 1995).

Failure to "discover and report" the unauthorized signature within 1 year from the time the bank makes available to the customer a statement of account accompanied by items paid in support of debit entries, precludes the customer's assertion of a claim against the bank. This constitutes "an absolute time limit on the right of a customer to make claim . . . without regard to care or lack of care of either the customer or the bank." See *id.*, comment 5 at 451.

The absolute nature of the time limit distinguishes it from a statute of limitations. Other jurisdictions have considered the identical limitation and concluded that it " 'is not merely a statute of limitations, but a rule of substantive law barring absolutely a customer's untimely asserted right to make such a claim against the bank.' " *Provident Savings Bank v. United Jersey Bank*, 207 N.J. Super. 303, 307, 504 A.2d 135, 137 (1985) (quoting *Brighton, Inc. v. Colonial First Nat'l Bank*, 176 N.J. Super. 101, 422 A.2d 433 (1980), *aff'd* 86 N.J. 259, 430 A.2d 902 (1981)). The statute establishes a condition precedent to an action which, unlike a statute of limitations, may not be tolled. *Pine Bluff Nat'l Bk. v. Kesterson*, 257 Ark. 813, 520 S.W.2d 253 (1975); *Billings v. East Riv. Sav. Bank*, 33 A.D.2d 997, 307 N.Y.S.2d 606 (1970). We agree, and hold that § 4-406(4) establishes a condition precedent that requires a customer to give notice to a bank within 1 year of the time the statement and items are made available to the customer of any unauthorized or altered signature as a prerequisite to filing suit.

In the instant case, the evidence establishes that the bank mailed to First Place its bank statement on a monthly basis. The statement reflected all deposits, credits, and debits to First Place's account for the period beginning on the first day of each month and ending on the last day of each month. Included in each monthly bank statement were the originals of all checks paid during the statement period, including all checks upon which First Place is making a claim in this lawsuit.

First Place is complaining about forged and unauthorized signatures on several checks that the bank allegedly honored and paid from September 1, 1988, through June 1989. The first time that First Place ever gave notice to the bank of any alleged forged or unauthorized signatures regarding checks that are the

subject matter of the present lawsuit was when a list of checks prepared by Ellsworth and his attorney was given to the bank sometime after June 22, 1992. However, First Place asserts that the bank was placed on sufficient notice when Ellsworth met with a bank officer in June 1989 and voiced his objection to the $4,000 check written to Adair and general concerns about irregularities in the checking account.

First Place's assertion ignores the requirement of § 4-406(4) that the customer discover and report "the item" on which the unauthorized signature appears. An item, as defined in Neb. U.C.C. § 4-104(1)(g) (Reissue 1980) (now amended and codified at Neb. U.C.C. § 4-104(a)(9) (Reissue 1992)), is an instrument for the payment of money. The language of the statutes in effect at the relevant time specifically requires a report of each item or check which the customer claims contained an unauthorized or forged signature.

Ellsworth did not report to the bank, in 1989 or 1990, alleged unauthorized or forged signatures regarding *any* of the 155 checks at issue in this case. We, therefore, conclude that the general concerns about possible irregularities in the account voiced by Ellsworth to the bank officer in June 1989 did not meet the requirement of § 4-406(4) that the customer discover and report "the item" on which the unauthorized signature appears.

Thus, because First Place did not discover and properly report the alleged forged or unauthorized signatures to the bank within 1 year, First Place's first two assignments of error are without merit.

## 2. SINGLE-SIGNATURE CHECKS

First Place next asserts that the district court erred in applying § 4-406(4) to 11 checks that bore only one of the two necessary signatures on this alleged two-signature account. First Place argues that the 1-year reporting prerequisite does not apply to these 11 checks because the absence of a necessary signature does not constitute an "unauthorized signature" within the meaning of § 4-406(4). Ellsworth signed nine of the "single-signature" checks; Adair signed the other two "single-signature" checks.

First Place's argument assumes, of course, that the signature card in evidence requires two signatures (i.e., Ellsworth's and Adair's) on each check presented for payment. The evidence does not support this assumption.

In spite of First Place's assertion, and the bank's assumption, the signature card does not require the signatures of both Ellsworth and Adair upon each check presented for payment. The signature card in evidence is set forth below.

**SECURITY NATIONAL BANK**
OMAHA, NEBRASKA

*Signature Card for Deposit Accounts*

Title of account: 1st Place Computers, Inc.

Social Sec. number/Fed ID number: 080-508-4

Date: 7-21-88

Deposit: 

State ID number: Bkpg.

Account number: 

Name of trust beneficiary, minor or POD payee:

Type of account:
- ☐ Checking
- ☐ Savings
- ☐ Interest plus Checking·Now
- ☐ Money Market Checking
- ☐ Money Market Savings
- ☐ Other _____

Depositor(s) is (are):
- ☐ an individual
- ☐ joint depositors with right of survivorship
- ☐ custodian for the minor named above
- ☐ trustee for the person named above

- ☐ a nonprofit corporation, partnership, association or organization
- ☐ a for-profit corporation, partnership, association or organization
- ☐ a government entity
- ☐ other _____

☐ This is a pay on death account, payable to the person named above. (Applies only if you offer this account.)

Title of account: 1st Place Computers, Inc.

Account number: 080-508-4

Number of signatures required:

By signing this card, I acknowledge receipt of and agree to the General Terms for all Deposit Accounts which you have given me.

Authorized signature(s):

Title(s):

The initials of the bank officer that assisted First Place in opening the account ("ECH") appear in the space that is designated for the number of signatures required for each check. There is nothing contained (1) on the signature card, (2) in the general contract for all deposit accounts (referenced on the signature card), or (3) in a separate corporate resolution that sets forth a two-signature requirement for presentment and honoring of each check on this account.

Accordingly, First Place's claim for damages regarding those checks that contain only one of the two "required" signatures fails as a matter of law. We need not determine whether a missing but necessary drawer's signature constitutes an "unauthorized signature" within the meaning of § 4-406(4).

## V. CONCLUSION

For the foregoing reasons, summary judgment was proper, and we affirm the judgment of the district court.

AFFIRMED.