Elbert BROWN, Plaintiff,

v.

CASH MANAGEMENT TRUST OF
AMERICA, et al., Defendants.

Civil No. AMD 97–841.

United States District Court,
D. Maryland.

May 8, 1997.

Jeffrey Rosenzweig, Eugene I. Glazer, Baltimore, for Plaintiff.

James D. Mathias, Piper & Marbury, Baltimore, Pamela J. White, Ober, Kaler, Grimes & Shriver, Baltimore, for Defendants.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff Elbert Brown instituted this action against defendants Cash Management Trust of America, American Funds Service Company and Chase Manhattan Bank by filing a complaint in the Circuit Court for Baltimore City. The defendants timely removed to this Court. The complaint contains six counts and asserts one breach of contract claim and one negligence claim against each defendant. Pending before the Court is the motion of Chase Manhattan Bank to dismiss or, in the alternative, for a more definite statement.

The complaint is extraordinarily obtuse, but reading it forgivingly [1], and filling in the blanks from factual matters set forth in the plaintiff's opposition to the motion, seems to reveal the following. At all relevant times, plaintiff was mentally incompetent. In March 1990, plaintiff and a person called "Rodcita Brown" (not otherwise identified) opened a checking account with defendant Cash Management Trust. Under the terms of the account, both signatures—plaintiff's and Rodcita Brown's—were required to negotiate a check. From shortly after the account was opened through 1994, Rodcita

---

1. A motion to dismiss for failure to state a claim is made pursuant to Fed.R.Civ.P. 12(b)(6). "[A] rule 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). In considering a motion to dismiss, the court must consider all facts and well-pled allegations in the complaint as true and all contrary allegations of the opposing party are to be disregarded. *See Hospital Bldg. Co. v. Trustees of the*

*Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, a defendant's motion to dismiss will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

Brown forged plaintiff's signature to checks which Chase paid. Plaintiff claims damages of $250,000. Thus, it appears that Rodcita Brown, presumably a relative of the plaintiff and presumably purporting to act in his best interest, arranged for plaintiff to open some kind of investment account with Cash Management Trust of America, which was linked to an associated demand account at Chase, and then proceeded to loot the account by forging plaintiff's signature on checks.

Plaintiff and Chase agree that New York law applies to the claims asserted against Chase, although the UCC principles relevant to the instant case appear to be largely universal. Chase makes several arguments in support of its motion. The gravamen of the motion to dismiss, however, is that on the face of the complaint it is clear that plaintiff failed to provide timely notice of the forgeries to Chase as required by New York's version of the Uniform Commercial Code. *See* N.Y.U.C.C. § 4–406(4).[2] Under the one year notice provision of § 4–406(4), plaintiff's claim is barred if (1) Chase made available to plaintiff on or before February 18, 1996,[3] the records of the account on which the checks forged by Rodcita Brown were drawn, or, if so, (2) plaintiff's alleged incompetence does not toll the notice provision.

As to the first issue, plaintiff contends that Chase never triggered the notice provision because Chase never "made available" within the contemplation of § 4–406(4) the necessary account documents. Chase agrees that this is true in a literal sense, and asserts that this fact points up Chase's alternative argument that plaintiff never became Chase's customer and that, consequently, no contract existed between plaintiff and Chase. Nevertheless, Chase contends that, in any event, as a matter of law it complied with the statute by providing the necessary documents to either Rodcita Brown and/or Cash Management Trust of America. This seems to me to be self-evidently correct. The complaint is unambiguous in alleging that the "checking

2. Section 4–406 provides in full:

4–406. Customer's Duty to Discover and Report Unauthorized Signature or Alteration

(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

(5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim.

3. Plaintiff concedes in his response that he did not provide notice to Chase until February 19, 1997, the date on which Chase was served with the complaint in this case. I accept this representation for purposes of the pending motion to dismiss. Plaintiff further contends that because he did not actually receive copies of the relevant documents and checks from defendant Cash Management Trust until May 30, 1996, the one year notice period under New York law did not actually commence until that date, and thus, he contends, notice up until May 30, 1997, would be timely. As stated in text, I reject this latter contention.

account" was opened "with the Defendant The Cash Management Company [sic] Trust of America." Compl., ¶ 2. Thus, Chase complied with New York law by providing the necessary account documents to plaintiff's agent, defendant Cash Management Trust of America. Manifestly, it would be absurd to suppose that Chase's potential liability turns on the timeliness of plaintiff's agent's acts in providing copies of account records to its principal. *See Woods v. MONY Legacy Life Ins. Co.*, 84 N.Y.2d 280, 617 N.Y.S.2d 452, 454–55, 641 N.E.2d 1070, 1072–73 (1994) (notice period triggered by delivery of account documents to customer's attorney); *American Ins. Co. v. Fidelity Bank & Trust Co. of N.J.*, 244 N.J.Super. 600, 583 A.2d 361, 363 (App.Div.1990); *Terry v. Puget Sound Nat'l Bank*, 80 Wash.2d 157, 492 P.2d 534, 535 (1972).

Furthermore, as to the second issue, New York law clearly regards the one year notice provision as an unalterable condition precedent to suit. *Billings v. East River Savings Bank*, 33 A.D.2d 997, 307 N.Y.S.2d 606, 607 (N.Y.App.Div.1970); *see Weiner v. Sprint Mortgage Bankers Corp.*, 652 N.Y.S.2d 629, 631 (N.Y.App.Div.1997) ("UCC 4–406(4) is not a Statute of Limitations 'fixing the time within which action may be brought.' Rather, it is a 'rule of substantive law' which creates a 'statutory prerequisite of notice'") (citations omitted). Plainly, as set forth above, plaintiff has failed to satisfy the prerequisites of suit under New York law. Plaintiff asserts that his mental incompetence should excuse his failure to provide notice, however, he has provided no relevant statutory or case law support for such a claim, and my independent research has found none. *Cf. Callace v. New York State Employees' Retirement System*, 140 A.D.2d 756, 528 N.Y.S.2d 175 (N.Y.App.Div.1988). The certainty which the Uniform Commercial Code seeks to achieve in respect to commercial transactions would quickly dissipate if *ad hoc* exceptions to its commands were too

eagerly crafted to accommodate the occasional "hard case." [4] I am constrained to decline plaintiff's invitation to do so in the case at bar. Accordingly, his claims against Chase are properly dismissed with prejudice. An order follows.

### ORDER

In accordance with the foregoing Memorandum, it is this 8th day of May, 1997, by the United States District Court for the District of Maryland, ORDERED

1) That the motion to dismiss filed by defendant Chase Manhattan Bank IS GRANTED; and it is further ORDERED

2) That counts V and VI of the complaint BE and they HEREBY ARE DISMISSED WITH PREJUDICE; and it is further ORDERED

3) That the Clerk MAIL copies of this Order and the foregoing Memorandum to counsel of record.

---

4. New York's highest court has observed:

[T]he UCC serves an important objective not shared by the law of torts.... Unlike tort law, the UCC has the objective of promoting certainty and predictability in commercial transactions. By prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by the exercise of care, the UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution.

*Putnam Rolling Ladder Co., Inc. v. Manufacturers Hanover Trust Co.*, 74 N.Y.2d 340, 547 N.Y.S.2d 611, 615, 546 N.E.2d 904, 908 (1989).