EURO MOTORS, INC., Plaintiff-Appellant, v. SOUTHWEST FINANCIAL BANK AND TRUST COMPANY, Defendant-Appellee.

First District (1st Division)    No. 1—97—1014

Opinion filed June 1, 1998.

Patricia A. Wrona, of Chicago, for appellant.

Carroll, Hartigan, Farmer, Cerney & McGillen, Ltd., of Chicago (John S. Carroll, of counsel), for appellee.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

In this action for breach of contract and conversion, plaintiff Euro Motors, Inc. (Euro Motors), filed a complaint against defendant Southwest Financial Bank and Trust Company (Southwest) following Southwest's wrongful payment of two checks having unauthorized signatures. Both parties filed motions for summary judgment in December of 1994. Southwest's motion asserted that Euro Motors did not timely notify Southwest of the unauthorized signatures as required by statute and that Euro Motors "ratified" the subject checks by accepting benefits therefrom. The trial court granted Southwest's motion, and Euro Motors appeals from this grant of summary judgment.

At the center of this appeal is whether section 4—406(f) of the Illinois Uniform Commercial Code (UCC) acts to bar Euro Motors' claim

against Southwest. 810 ILCS 5/4—406(f) (West 1994). More specifically, the question is whether the one-year time limitation in section 4—406(f)[1] acts as a statute of limitations, which can be tolled, or a statutory prerequisite to suit, which must be met before a claim based on an unauthorized or altered signature may proceed. This issue is a matter of first impression in Illinois.

FACTS

The facts in this case are basically undisputed. In December 1993, Euro Motors opened a commercial checking account at defendant bank, Southwest. The account required two signatures for any check drawn for an amount over $30,000. Three of the officers of Euro Motors, F. James Wolff (Wolff), Lillian Krilich and Aspasia Krilich, were the authorized signatories on the account.

In January 1994, Southwest paid check number 5010 in the amount of $36,300 drawn on Euro Motors' account. The check had only one signature, that of Euro Motors' acting president, Wolff. Southwest provided Euro Motors with the cancelled check and the account statement at the beginning of February, but Euro Motors did not notify Southwest of the missing signature or protest payment of the check.

In March 1994, Southwest paid check number 5182 in the amount of $30,500 drawn on Euro Motor's account, and again the check had only Wolff's signature. Though Southwest again provided Euro Motors with the cancelled check and account statement, the bank received no notification of any problems with the check.

Euro Motors asserts that in March of 1995, Wolff was removed from his position as president of Euro Motors after it was discovered he was "grossly mismanaging" the business. It was not until a subsequent review of the company's financial records was conducted that the wrongful payment of check numbers 5010 and 5182 was discovered. Euro Motors filed this suit on January 4, 1996, to recover the face value of the checks.

Euro Motors claims it could not have discovered the unauthorized signatures earlier, as Wolff had control of the financial documents that indicated the unauthorized payments. Euro Motors further argues that section 4—406(f) of the UCC is properly considered a statute of limitations and should not have begun to run until the unauthorized payments were discovered by the rest of the corporation. Southwest contends that Euro Motors' action is time-barred by section 4—406(f),

---

[1]Note that section 4—406(f) of the Illinois UCC contains language identical to section 4—406(4) of the UCC in other jurisdictions.

which is not a statute of limitations but, rather, a statute of repose that cannot be tolled. The trial court agreed that section 4—406(f) barred Euro Motors' claims for wrongful payment of check numbers 5010 and 5182, and granted summary judgment to Southwest on this basis. It is from this order that Euro Motors appeals.

ANALYSIS

I

■ The appellate review of a grant of summary judgment is *de novo*. *USG Corp. v. Sterling Plumbing Group, Inc.*, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69 (1993). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). The function of the appellate court in reviewing the grant of summary judgment is not to decide disputed issues of fact but rather to determine whether a factual dispute exists. *Kerr v. Illinois Central R.R. Co.*, 283 Ill. App. 3d 574, 583, 670 N.E.2d 759 (1996). The court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Quality Lighting, Inc. v. Benjamin*, 227 Ill. App. 3d 880, 883, 592 N.E.2d 377 (1992); *Zekman v. Direct American Marketers, Inc.*, 286 Ill. App. 3d 462, 467, 675 N.E.2d 994 (1997).

The focus of this appeal is whether Euro Motors' cause of action against Southwest is time-barred by section 4—406(f) of the Illinois UCC.

■ The relevant portions of section 4—406 read as follows:

"§ 4—406. Customer's duty to discover and report unauthorized signature or alteration.

(a) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer to identify the items paid. ***

\* \* \*

(f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration." 810 ILCS 5/4—406 (West 1994).

■ The UCC also provides that if a signature of more than one person is required to constitute the authorized signature of an organi-

zation, the signature of the organization is unauthorized if one of the required signatures is missing. 810 ILCS 5/3—403 (West 1994). Thus the two checks at issue in the present case contain "unauthorized signatures" and fall under the time limitation discussed in section 4—406.

Euro Motors cites *Watseka First National Bank v. Horney*, 292 Ill. App. 3d 933, 686 N.E.2d 1175 (1997), in support of its contention that section 4—406(f) is a statute of limitations and subject to tolling. Euro Motors bases this assertion on the fact that the *Watseka* court refers to the time limitation in section 4—406(f) as a "statute of limitations" throughout its opinion. Though the *Watseka* opinion uses the term "statute of limitations" in reference to section 4—406(f), it does not assert that section 4—406(f) provides a one-year time period in which a suit must be brought. Rather, *Watseka* states that "claims against the bank are precluded if the customer failed to *discover and report unauthorized items within one year* after the customer received the bank statements and accompanying items." (Emphasis added.) *Watseka*, 292 Ill. App. 3d at 938. The *Watseka* court seems to be interpreting section 4—406(f) as a condition that must be met before suit can be brought—not a time limit within which a suit must be filed or a statute of limitations.

The majority of other jurisdictions that have considered this issue have interpreted the one-year limitations period as a rule of substantive law that creates a statutory prerequisite of notice, not as a statute of limitations within which a suit must be filed.

The case of *Wetherill v. Putnam Investments*, 122 F.3d 554 (8th Cir. 1997), dealt with a situation very similar to the case at bar. In *Wetherill*, an unscrupulous employee of the plaintiff corporation fraudulently signed and endorsed checks drawn on the corporate account during a three-year period from 1986 through 1989. These fraudulent activities were not discovered until late 1992 or early 1993, and the corporation president sent notice of the unauthorized activity to the defendant companies on May 11, 1993. The plaintiff contended that the time for giving notice did not begin to run until the corporation discovered or should have discovered the employee's unscrupulous activity. The eighth circuit disagreed and, in construing Massachusetts' UCC section 4—406(4), held that the time limit in the statute is "not a statute of limitations which might not start to run until the plaintiff knew or should have known of their employee's treachery; rather, it fixes the time within which the plaintiff must give notice to the defendant." *Wetherill*, 122 F.3d at 556-57. The court held UCC section 4—406(4) establishes a statute of repose under which the time for bringing suit expires one year following the availability of the relevant account statements. *Wetherill*, 122 F.3d at 556-57.

A similar result was reached in *Brown v. Cash Management Trust of America*, 963 F. Supp. 504 (D. Md. 1997). In *Brown*, the plaintiff contended his mental incompetence excused his statutory duty to discover and report unauthorized checks under New York's version of section 4—406(f). The court held that New York law clearly regards the one-year notice provision as an unalterable condition precedent to suit. *Brown*, 963 F. Supp. at 506. The court held that the statute was not a statute of limitations fixing the time within which an action must be brought but rather a rule of substantive law that created a statutory prerequisite of notice. *Brown*, 963 F. Supp. at 506.

In *Concrete Materials Corp. v. Bank of Danville & Trust Co.*, 938 S.W.2d 254 (Ky. 1997), an employee of the plaintiff corporation charged with depositing checks embezzled funds from the corporation over a period of eight years. The corporation made several claims against the bank, which the defendant bank claimed were precluded as the unauthorized activity was not discovered and reported within the one-year time period found in Kentucky's UCC section 4—406(4). The court held that the failure of the plaintiff corporation to examine its bank statements and the failure to report the unauthorized withdrawals disclosed therein precluded it from recovering its alleged losses against defendant bank. *Concrete Materials Corp.*, 938 S.W.2d at 256. In coming to this conclusion, the court determined that cases from the jurisdictions that have examined this issue have uniformly held that section 4—406(4) requires dismissal of those claims relating to alterations or unauthorized withdrawals where the plaintiff failed to discover and report them within one year after receiving the bank statements and related items. *Concrete Materials Corp.*, 929 S.W.2d at 258.

Many other jurisdictions have come to the same conclusion. See *Gerber v. City National Bank*, 619 So. 2d 328 (Fla. Dist. Ct. App. 1993) (holding that statute imposing duty on customer to discover and report unauthorized signature on check was notice requirement, not statute of limitations); *Weiner v. Sprint Mortgage Bankers' Corp.*, 235 A.D.2d 472, 652 N.Y.S.2d 629 (1997) (UCC section 4—406(4) is not a statute of limitations but a rule of substantive law which creates a statutory prerequisite of notice); *Roy Supply, Inc. v. Wells Fargo Bank*, 39 Cal. App. 4th 1051, 46 Cal. Rptr. 2d 309 (3d Dist. 1995) (the time limitation of UCC section 4—406(4) is an issue preclusion statute rather than a statute of limitations); *Harvey v. First National Bank*, 924 P.2d 83 (Wyo. 1996) (a customer who has failed to notify the bank within the required period of time is subject to the bar of the limitations of UCC section 4—406 without regard to whether the customer sues the bank on theories of tort, contract, or breach of fiduciary duty);

*Hartford Accident & Indemnity Co. v. Dean's Shop-rite, Inc.*, 48 N.C. App. 615, 269 S.E.2d 282 (1980) (UCC section 4—406(4) establishes a standard and reasonable time that applies to notifying any payor that signatures were unauthorized).

■ In addition to the overwhelming authority supporting the construction of section 4—406(f) as a statutory prerequisite of notice rather than a statute of limitations, there are strong practical and public policy concerns which favor such an interpretation.

First, employers generally have a comparative advantage over financial institutions to prevent diversion of company funds by their own employees. *Menichini v. Grant*, 995 F.2d 1224 (3d Cir. 1993). In *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 286 Ill. App. 3d 1069, 678 N.E.2d 322 (1997), the court declined to apply the discovery rule to actions for conversion of negotiable instruments, stating that the victim of the conversion is in the best position to easily and quickly detect the loss and take appropriate action. *Haddad's*, 286 Ill. App. 3d at 1075. The court noted the public would be poorly served by a rule that effectively shifted the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. *Haddad's*, 286 Ill. App. at 1075, quoting *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476 (Iowa 1990). Likewise, allowing the one-year time period in section 4—406(f) of the UCC to be subject to a "discovery rule" would shift the burden of reviewing accounts and monitoring employees away from the customer and to the bank, which is less equipped to do so.

The *Haddad's* court also noted that the commercial policies underlying the UCC require that liability on negotiable instruments not be open-ended. *Haddad's*, 286 Ill. App. 3d at 1074. In the present case, plaintiff Euro Motors urges us to make an exception to the one-year limitations period based on the particular factual circumstances involving a dishonest employee. However, in *Brown v. Cash Management Trust of America*, the court noted that the commercial certainty that the UCC seeks to achieve in respect to commercial transactions would quickly dissipate if *ad hoc* exceptions to its commands were too eagerly crafted to accommodate the occasional "hard case." *Brown*, 963 F. Supp. at 506. The court, quoting New York's highest court, stated the following:

> "[U]nlike tort law, the UCC has the objective of promoting certainty and predictability in commercial transactions. By prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by the exercise of care, the UCC not only guides commercial behavior but also increases certainty in the marketplace

and efficiency in dispute resolution." *Brown*, 963 F. Supp. at 506 n.4, quoting *Putnam Rolling Ladder Co. v. Manufacturers Hanover Trust Co.*, 74 N.Y.2d 340, 349, 546 N.E.2d 904, 908, 547 N.Y.S.2d 611, 615 (1989).

If we were to interpret section 4—406(f) as plaintiff Euro Motors suggests, it would be in complete disregard for the principle of commercial certainty and for the underlying rationale of the UCC. Permitting Euro Motors' claim to go forward based on corporate officers' delayed discovery of unauthorized checks would open a Pandora's box. Under this scenario, a claim against an unauthorized transaction could be made at any time, even 50 years from the date of payment, if a bank customer neglected to review and monitor his or her bank statements.

Section 4—406(f) clearly places upon a bank's customer the duty of bringing to the bank's attention any item containing an unauthorized signature which has been debited to the customer's account. It evidences a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged, altered or unauthorized items. *Knight Communications, Inc. v. Boatmen's National Bank*, 805 S.W.2d 199, 202 (Mo. App. 1991).

We agree with the majority of jurisdictions that section 4—406(f) is a rule of substantive law that creates a statutory prerequisite to filing suit. Failure to "discover and report" an unauthorized signature within one year from the time the bank makes available to the customer a statement of account and accompanying items precludes the customer's assertion of a claim against the bank. *First Place Computers, Inc. v. Security National Bank*, 251 Neb. 485, 558 N.W.2d 57 (1997). This creates a time limit on the right of a customer to make a claim for payment, without regard to care or lack of care of either the customer or the bank. See 7 R. Anderson, Anderson on the Uniform Commercial Code, Official Code Comment, § 4—406:1, at 451 (3d ed. 1995).

The absolute nature of the time limit distinguishes it from a statute of limitations. The statute establishes a precedent to an action which, unlike a statute of limitations, cannot be tolled. *First Place Computers*, 251 Neb. at 489, 558 N.W.2d at 60. If a customer makes a claim against a bank for payment on an unauthorized signature or alteration within the one-year period specified in section 4—406(f), that customer may commence an action as long as it is filed within the applicable statute of limitations. If the action is based on a UCC violation, the statute of limitations is three years. 810 ILCS 5/4—111 (West

1994). A claimant asserting a common law action, such as conversion or breach of contract, must comply with the appropriate statute of limitations as well.

■ The one-year time period at issue in section 4—406(f) is not a statute of limitations; it does not give a customer a year to bring suit. Rather, it simply requires the customer to notify the bank of an unauthorized signature or alteration within a year in order to *preserve the right* to bring suit.

This interpretation of the statute is consistent with case law in the majority of other jurisdictions in which section 4—406(f) of the UCC has been considered. In addition, our analysis of the issue is consistent with the plain language of the statute and is clearly supported by public policy and practical concerns.

Because section 4—406(f) bars Euro Motors' claim for recovery, we need not address whether the checks in question were ratified.

## II

■ Both the breach of contract claim and the conversion claim asserted in Euro Motors' complaint are time-barred by section 4—406(f). This provision bars any untimely claims, whether under the UCC or under the common law. *Wetherill*, 122 F.3d at 558. The time limit imposed by UCC section 4—406 is applicable without regard to the theory on which the customer brings his or her action. *Siecinski v. First State Bank*, 209 Mich. App. 459, 531 N.W.2d 768 (1995); *Jensen v. Essexbank*, 396 Mass. 65, 483 N.E.2d 821 (1985). See also 7 R. Anderson, Anderson on the Commercial Code, § 4—406:24, at 466 (3d ed. 1995). Moreover, the commercial certainty doctrine and the purposes of the UCC are compelling regardless of the theory underlying the lawsuit.

CONCLUSION

We hold that the one-year time limitation in section 4—406(f) of the UCC is not a statute of limitations, but a statutory prerequisite to suit. It simply requires the customer to notify the bank of an unauthorized signature or alteration within a year in order to preserve the right to bring suit. Accordingly, we find Euro Motors' claim is time-barred under the statute. As there exists no genuine issue of material fact, Southwest is entitled to judgment as a matter of law, and the decision of the trial court is affirmed.

Affirmed.

O'BRIEN and GALLAGHER, JJ., concur.