WOODBRIDGE, Admr., Appellant,

v.

HUNTINGTON NATIONAL BANK, Appellee.

[Cite as *Woodbridge v. Huntington Natl. Bank*, 168 Ohio App.3d 722, 2006-Ohio-4784.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–216.

Decided Sept. 14, 2006.

Erica Ann Probst and Steven D. Rowe, for appellant.

Schottenstein, Zox & Dunn, John P. Gilligan, and Catherine L. Strauss, for appellee.

TRAVIS, Judge.

{¶ 1} Plaintiff-appellant, Thomas Woodbridge, as executor of the estate of Harold E. Woodbridge ("decedent"), appeals from the Franklin County Court of Common Pleas' entry of summary judgment in favor of appellee, Huntington National Bank.

{¶ 2} Decedent maintained a checking account with appellee. During that time, appellee routinely sent monthly statements to decedent, including statements for the period September 15 through November 15, 2000. The statements were mailed around the 15th of each month to the address provided by decedent. Each statement included a description of the check number, amount, and date of payment and also included copies of each check. Decedent died on October 14, 2000.

{¶ 3} It appears that, during this time, Harry Woodbridge, son of decedent and brother of appellant Thomas Woodbridge, forged his father's name on five checks totaling $36,000. It appears that all of the checks were dated before decedent's death.[1] The checks were debited from decedent's account on September 18, October 17, and October 19, 2000.

{¶ 4} Due to an issue regarding the validity of his will, decedent's estate was not opened until April 2003. On April 11, 2003, appellant requested all information related to decedent's account with appellee. Upon reviewing the statements, appellant discovered the five forged checks drawn on decedent's account. On July 16, 2003, counsel for appellant sent correspondence to appellee advising that five checks appeared to be forgeries. Formal notice of the forgeries was presented to appellee in September 2003.

{¶ 5} On September 15, 2003, appellant filed a complaint pursuant to R.C. 1304.30 to recover from appellee the funds debited from decedent's account. Appellant asserted that the estate was entitled to recover from appellee because he notified appellee of the forgery within one year of discovering the unauthorized signatures and debits.

{¶ 6} Appellee countered that appellant's claim was barred by R.C. 1304.35(F), Ohio's version of the Uniform Commercial Code ("U.C.C.") 4–406. R.C. 1304.35(F) provides:

Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer discover and report his unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration[2] if there is a preclusion under this division, the payor bank may not recover for breach of warranty under section 1304.28 of the Revised Code with respect to the unauthorized signature or alteration to which the preclusion applies.

{¶ 7} Both parties filed for summary judgment. On February 14, 2006, the trial court denied appellant's motion, and granted summary judgment for appellee. Appellant timely appealed and asserts one assignment of error:

The trial court improperly granted defendant-appellee's motion for summary judgment.

---

1. The checks bore the dates of September 7, 18, 20, 21, and 28.

2. It appears that the enrolled bill inadvertently omitted ending punctuation at this point. The only reasonable construction is that the text continues as a new sentence: "If there is a preclusion under this division." This is consistent with Section 4–406(F) of the Official 1990 Revision of the Uniform Commercial Code, adopted in Ohio in 1994. We conclude that R.C. 1304.35(F) simply contains a typographical error.

{¶ 8} Appellate review of motions for summary judgment is de novo. The moving party bears the initial burden of proving that (1) no genuine issues of material fact exist, (2) the moving party is entitled to summary judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ.R. 56. Where the evidence supports a motion for summary judgment, the nonmoving party must present specific facts beyond the pleadings to show that a genuine issue of material fact exists and therefore the moving party is not entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 9} Appellant argues that the trial court failed to correctly analyze the language of the statute and offers suggestions on how it should be read in order to avoid what appellant believes is a harsh outcome. The primary rule of statutory construction is to "apply a statute as it is written when its meaning is unambiguous and definite. An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language, and a court cannot simply ignore or add words. The purpose of statutory construction is to discern the actual meaning of the statute." (Citations omitted.) *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, at ¶ 52.

{¶ 10} We find that the language in R.C. 1304.35(F) is not ambiguous. The section makes clear that there is no requirement of due care either on the part of the customer or the bank. "Without regard to care or lack of care of either the customer or the bank," a customer has one year to report a forged check. Id. The statute contains no exception to this requirement. A claim against the bank based on an unauthorized signature or an alteration is barred unless, within one year after the bank sends or makes available to the customer the statement of account, the customer reports the unauthorized signature or alteration.

{¶ 11} Appellant argues that a strict interpretation of the statute produces a harsh and unfair result under the circumstances of this case. Although application of the statute may produce a harsh result, to reach the result appellant seeks would require this court to read into the statute an exception where the bank customer dies before the account statement is received. That would amount to legislation by judicial fiat and is beyond the proper role of a court. Any amendment of the statute to provide an exception to the rule is the province of the legislature.

{¶ 12} Moreover, a strict reading of the statute is consistent with the policy behind U.C.C. 4–406, to promote certainty and predictability in commercial transactions. The public policy behind U.C.C. 4–406 (R.C. 1304.35) was articulated by the New York Court of Appeals in *Putnam Rolling Ladder Co., Inc. v. Mfrs. Hanover Trust Co.* (1989), 74 N.Y.2d 340, 547 N.Y.S.2d 611, 546 N.E.2d 904:

Unlike tort law, the UCC has the objective of promoting certainty and predictability in commercial transactions. By prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by the exercise of care, the UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution.

Id. at 349, 547 N.Y.S.2d 611, 546 N.E.2d 904.

■ {¶ 13} Courts in other jurisdictions have upheld the one-year bar as being consistent with that policy. The one-year bar provided in U.C.C. Section 4–406 (R.C. 1304.35) does not act as a statute of limitations, but is, instead, a substantive element of a claim for payment of a forged check. See *Euro Motors, Inc. v. Southwest Financial Bank & Trust Co.* (1998), 297 Ill.App.3d 246, 231 Ill.Dec. 415, 696 N.E.2d 711, citing *Wetherill v. Putnam Invest.* (C.A.8, 1997), 122 F.3d 554, and *Brown v. Cash Mgt. Trust of Am.* (D.Md.1997), 963 F.Supp. 504, 506 ("New York clearly regards the one year notice provision as an unalterable condition precedent to suit").

{¶ 14} The Court of Appeals for the Sixth Appellate District has applied R.C. 1304.35(F) to bar recovery where the claim was not filed within one year after the account statement was sent to the customer, even though the customer died before the account statement was received. *Haney v. First Fed. S. & L. Assn. of Toledo* (Sept. 16, 1988), Lucas App. No. L–87–397, 1988 WL 96180 ("The one-year limitation, however, is strictly applied regardless of the circumstances").

■ {¶ 15} Here, the evidence is uncontroverted that statements for transactions taking place on the decedent's account from September 15 through November 13, 2000, were sent to decedent's designated address. The statute requires that notice of forgeries must be given within one year from when the statements were made available to the customer and makes no exception where a customer dies. The terms "makes available" and "sends" are used synonymously in R.C. 1304.35(A). " 'Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication." R.C. 1301.01[LL].

{¶ 16} Regardless of the circumstances, including the customer's death, the one-year limitation began to run when the statements were sent from appellee to decedent's address in 2000. It was imperative that either the decedent or an estate bring a claim for payment against appellee within one year after the statements were sent to the decedent's designated address, not when the statements were made available to the estate in 2003. Thus, appellant is barred by R.C. 1304.35 from bringing a claim three years after the account was made available to the customer.

{¶ 17} To accept appellant's argument and allow a claim to be filed within one year of discovery of the unauthorized or altered signature would not only rewrite the statute, but would undermine the certainty, predictability, and efficiency demanded by the U.C.C. R.C. 1304.35 provides a strict one-year time limit that is to be enforced without exception. Apparently, through no fault of his own, appellant did not present his claim within one year after decedent's bank statement was sent to decedent's address. However, R.C. 1304.35(F) clearly states that the one-year period is to be applied "[w]ithout regard to care or lack of care of either the customer or the bank." Accordingly, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

KLATT, P.J., and FRENCH, J., concur.