2183

Ruby M. SABATINO, Appellant v. ATLANTIC SAVINGS BANK, F.S.B., Respondent v. Arthur M. SABATINO, Third Party Defendant.

(444 S.E. (2d) 537)

Court of Appeals

*Otto W. Ferrene, Jr.,* of *Ferrene & Keep,* Hilton Head Island, *for appellant.*

*Curtis L. Coltrane,* of *Wilson & Coltrane,* Hilton Head Island, *for respondent.*

*D.L. Aydlette, III,* of *Harvey & Battey,* Beaufort, *for third party defendant.*

Heard April 13, 1994.

Decided May 9, 1994; Reh. Den. June 23, 1994.

BELL, Judge:

This is an action for conversion. Ruby M. Sabatino, a customer of Atlantic Savings Bank, sued the Bank alleging that it was liable under S.C. Code Ann. § 36-3-419(1)(c) (1976) for cashing checks upon which her signature was forged. The circuit court granted partial summary judgment for the Bank. Sabatino appeals. We affirm.

Between December, 1987, and September, 1989, the Bank issued seven cashier's checks totalling over $42,000 payable to Ruby M. Sabatino and debited to her account with the Bank. Sabatino alleges her signature was placed on the back of each check without her authorization.[1] She discovered the unauthorized signatures in February, 1990, but did not notify the Bank until this suit commenced in August, 1991. The circuit court granted partial summary judgment based on S.C. Code Ann. § 36-4-406 (4) (1976), which provides:

> Without regard to care or lack of care of either the customer or the bank[,] a customer who does not within one year from the time the statement and items are made available to the customer . . . discover and report his unauthorized signature . . . on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement. . . .

On appeal, Sabatino argues the time limits of section 36-4-

---

[1] The evidence indicates Sabatino's husband had signed her name on the checks.

406(4) do not begin to run until the Bank actually provides the disputed items for inspection. Alternatively, she argues the circuit court erred in applying the one-year limit for reporting unauthorized signatures rather than the three-year time limit for reporting unauthorized indorsements.

## I.

Summary judgment is appropriate under Rule 56, SCRCP, only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cafe Associates, Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991). The court, in deciding a motion for summary judgment, must view all evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Id.* The material facts in this case are not in dispute.

Section 36-4-406 creates an affirmative duty on the part of the customer to discover and report any unauthorized signatures. The time limits imposed in subsection (4) for making a claim against the Bank start at "the time the statement and items are made available to the customer," referring to subsection (1). Subsection (1) requires the customer to exercise reasonable care to discover and report unauthorized signatures or alterations "[w]hen a bank sends to its customer a statement of account accompanied by items paid . . . or holds the statement and items pursuant to a request or instructions of its customer *or otherwise in a reasonable manner makes the statement and items available to the customer*." (Emphasis added.) The cancelled copies of the disputed cashier's checks were not sent with Sabatino's monthly statements because they were bank drafts. The withdrawals from her account to pay for the checks, however, were reflected in the monthly statements that she received.[2] The record shows that copies of the checks were available to Sabatino had she inquired about the withdrawals. Under the circumstances of this case, we hold the statements and items were made available to Sabatino when she received the statements evidencing the withdrawals and, therefore, that the

---

[2] The withdrawals were relatively large compared to other transactions in these accounts and, if they were unauthorized, should have been sufficient to notify Sabatino of the need to investigate the transactions.

time limits of section 36-4-406(4) began to run at that time.[3]

## II.

Sabatino next argues the circuit court should have applied the three-year limit for reporting unauthorized indorsements.

In determining whether to apply the one-year limit or the three-year limit, the dispositive issue is whether the unauthorized signature is that of the customer or that of some other party. If it is that of the customer, the one-year limit applies. The Official Comments to section 36-4-406(4) make this clear: "In the case of . . . the unauthorized signature of the customer himself the absolute time limit is one year." S.C. Code Ann. § 36-4-406 cmt. 5 (1976).

Although Sabatino contacted the Bank in January, 1991, to request information regarding her account, she did not notify the Bank that her signatures were unauthorized until the complaint was served in August, 1991. Because service of the complaint was beyond the one-year limit for reporting the unauthorized signature of a customer, Sabatino is precluded by section 36-4-406(4) from holding the Bank liable. Therefore, the circuit court correctly granted summary judgment on the conversion cause of action.

Affirmed.

GOOLSBY and CONNOR, JJ., concur.

<hr/>

[3]The purpose of requiring the bank to make the statement and items available is to allow the customer to discover unauthorized signatures or alterations. Sabatino admits that she discovered the unauthorized signatures in February, 1990. Nevertheless, she did not report them to the bank until August, 1991.