[826 NYS2d 350]

Robinson Motor Xpress, Inc., Appellant, v HSBC Bank, USA, Respondent.

Second Department, December 5, 2006

APPEARANCES OF COUNSEL

*Herzfeld & Rubin, P.C.*, New York City (*Herbert Rubin, David B. Hamm* and *Jeannine LaPlace* of counsel), for appellant.

*Phillips Lytle, LLP*, New York City (*Meredith L. Friedman* and *Anthony DiPaolo* of counsel), for respondent.

## OPINION OF THE COURT

SPOLZINO, J.

This is an action to recover approximately $116,000 in checks drawn on the plaintiff's account on signatures allegedly forged by an employee of the plaintiff. The principal issue is whether the plaintiff, a banking customer of the defendant, is barred from recovery against the defendant by UCC 4-406 (4). The Supreme Court, among other things, granted the defendant's motion for summary judgment dismissing the complaint on the ground that the plaintiff had failed to notify the defendant of the alleged forgery in writing within one year of the date on which the statements were mailed, as it understood that provision to require. We hold that the Supreme Court erred in doing so.

The alleged forgeries occurred during a period of several months beginning in December 2000. The plaintiff's principals first became aware of the forgeries in the spring of 2001 when they discovered several of the allegedly forged items at the plaintiff's business premises. According to their affidavits, they visited the bank branch at which the account had been opened within a few days after discovering the forgeries and showed copies of the allegedly forged items to an officer of the defendant. The officer admits that he met with the plaintiff's principals at that time, but denies that they showed him copies of any of the allegedly forged items and recalls only that he provided them with the defendant's form of affidavit for making a forgery claim. The plaintiff did not submit the affidavit, or any other written notice of the forgery claim, until January 2003.

The issue arises on the defendant's motion for summary judgment dismissing the complaint. In this posture, we view the evidence in the light most favorable to the plaintiff, the party opposing the motion for summary judgment, and draw all reasonable inferences in its favor (*see McNulty v City of New York*, 100 NY2d 227, 230 [2003]; *Boyd v Rome Realty Leasing Ltd. Partnership*, 21 AD3d 920, 921 [2005]; *Erikson v J.I.B. Realty Corp.*, 12 AD3d 344 [2004]). To be entitled to summary judgment dismissing the complaint, the defendant is required to "make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Even if such a showing is made, the motion must be denied if the plaintiff "produce[s] evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim" (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

A bank is strictly liable to its customer when it pays a check on a forged signature (*see* UCC 4-401; *Monreal v Fleet Bank*, 95 NY2d 204, 207 [2000]; *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340, 345 [1989]). The bank avoids such liability, however, under UCC 4-406 (4), when it makes statements of the account and the allegedly forged items available to the customer, and the customer fails to report the alleged forgery to the bank within one year.

"When a customer requests that a bank mail the statements either to himself or to another person, and the bank complies, the statements are considered 'made available to the customer' for the purposes of the UCC" (*Matin v Chase Manhattan Bank*, 10 AD3d 447, 448 [2004]). Thus, where the statements are provided as directed by the customer, or in a manner of which the customer is aware but to which the customer does not object, the statements are "made available" within the meaning of the statute (*see Woods v MONY Legacy Life Ins. Co.*, 84 NY2d 280, 285-286 [1994]; *see also Brown v Cash Mgt. Trust of Am.*, 963 F Supp 504 [1997]; *Henrichs v Peoples Bank*, 26 Kan App 2d 582, 584, 992 P2d 1241, 1243-1244 [1999]; *Borowski v Firstar Bank Milwaukee, N.A.*, 217 Wis 2d 565, 579 NW2d 247 [1998]; *Stowell v Cloquet Co-op Credit Union*, 557 NW2d 567, 570 [Minn 1997]; *Jensen v Essexbank*, 396 Mass 65, 483 NE2d 821 [1985]; *Cooley v First Natl. Bank of Little Rock*, 276 Ark 387, 389, 635 SW2d 250, 252 [1982]; *Terry v Puget Sound Natl. Bank*, 80 Wash 2d 157, 492 P2d 534 [1972]), and the bank is entitled to the protec-

tions afforded by UCC 4-406 (4) even if the statements are thereafter intercepted by a dishonest employee or other ill-intentioned third party (*see Union Planters Bank, N.A. v Rogers*, 912 So 2d 116, 121-122 [Miss 2005]; *Kiernan v Union Bank*, 55 Cal App 3d 111, 115, 127 Cal Rptr 441, 443-444 [1976]).

Here, the account agreement provided that the statements would be mailed to the address provided on the signature card unless that address was subsequently changed by a document executed by an authorized signatory. The original signature card for the account directed that the statements be mailed to the office of the plaintiff's accountants. The plaintiff's principals, who are the only authorized signatories on the account, deny that they directed the defendant to change the address to which the statements were to be sent, and the defendant did not produce any properly-executed document directing a change in that address. The record reflects, however, that, commencing with the third monthly statement, several months before the alleged forgeries began, the statements ceased to be mailed to the plaintiff's accountants' address, and began to be mailed to the plaintiff's office address. The defendant proffers no explanation for the change, asserting only that "HSBC mailed plaintiff its Statements of Account monthly to the address provided on plaintiff's Signature Card and subsequent address changes which are reflected on the Statements."

In the circumstances presented here, even though the statements were mailed to a business address of the plaintiff, they were not "made available" to the plaintiff within the meaning of the statute because they were mailed to an address other than that which the plaintiff had designated for that purpose. A mailing is normally sufficient if it reaches the customer at its business address, even if that was not the business address identified for the delivery of such documents (*see generally Woods v MONY Legacy Life Ins. Co., supra* at 282; *Mesnick v Hempstead Bank*, 106 Misc 2d 624, 626 [1980]). Nevertheless, where, as here, the customer has expressly directed that the statements be mailed to a specific address or officer, as it might for the purpose of preventing a fraud such as was perpetrated here (*see Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co., supra* at 343), and the bank fails to comply with that instruction, such delivery is equivalent to the statements having been improperly directed to an address unrelated to the plaintiff, and the statements cannot be said to have been "made available" to the plaintiff by the mailing (*Matin v Chase*

*Manhattan Bank, supra* at 449; *see York Specialties Co. v Bank of Buffalo*, 30 AD2d 1044, 1045 [1968]).

The only authority that appears to reach a different conclusion is *Wetherill v Putnam Invs.* (122 F3d 554 [1997]). In *Wetherill*, however, the plaintiff, who was the principal of the defendant bank's corporate customer, had completely entrusted the management of the corporate finances to the dishonest employee and, in connection with doing so, had authorized the employee to change the corporate address of record to the employee's home. The employee then had the address to which the defendant was directed to send statements changed to a nearby post office box that was used by the corporation for its business. Thus understood, *Wetherill* simply stands for the proposition that the customer, having essentially consented to place the statements in the forger's hands, was in no position to avoid the consequences of UCC 4-406 (4). Since there is no comparable conduct by the plaintiff here, the defendant has failed, except with respect to the cancelled checks discovered by the plaintiff's principals at its business premises, to establish when the statements were made available to the plaintiff and, consequently, it did not demonstrate that the notice provided to it in January 2003 was untimely.

The plaintiff had actual notice in the spring of 2001, however, of the 24 allegedly forged checks that were located at its business premises at that time. As to those items, the defendant did establish its prima facie entitlement to judgment as a matter of law by submitting evidence that it did not receive notice of the alleged forgery that occurred in 2000 and 2001 until January 2003 (*see Sabatino v Atlantic Sav. Bank, F.S.B.*, 314 SC 402, 404-405, 444 SE2d 537, 538 [1994]). In opposition, however, the plaintiff raised an issue of fact on the basis of the affidavits of its principals asserting that they had met with an official of the defendant and shown him the allegedly forged items within days of their discovery.*

The act required of the customer to avoid being precluded from recovery by UCC 4-406 (4) is to "report" the unauthorized

---

* Since our decision in this regard is predicated on the plaintiff's assertion that it met with the defendant's manager "within days" of its discovery of the checks, an assertion which we resolve in the plaintiff's favor for purposes of this motion (*see Ingle v Glamore Motor Sales*, 73 NY2d 183, 194 [1989]), we need not address the defendant's contention that such notice was untimely under the deposit agreement, even assuming that such an agreement is enforceable (*see Regatos v North Fork Bank*, 5 NY3d 395 [2005]).

signature to the bank. The UCC does not define the term "report" (*see* UCC 1-201, 4-104). It does, however, explicitly address the concept of notice, by providing that "[a] person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it" and that "[a] person 'receives' a notice or notification when (a) it comes to his attention; or (b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications" (UCC 1-201 [26]). There is nothing in either of these definitions that requires a writing.

In *Woods v MONY Legacy Life Ins. Co.* (*supra* at 282), the Court of Appeals stated that "UCC 4-406 (4) bars suit to recover amounts paid by a bank on a forged instrument unless the customer gives *written* notice of the forgery within one year of the time the account statement was made available" (emphasis supplied). The form of the notice was not in issue in *Woods*, however, since the plaintiff in that case gave the bank no notice of the forgery of any kind during the one-year period following the date on which it received monthly statements with respect to the account. We have nevertheless restated the requirement that notice be written, as have our colleagues in the First and Fourth departments, in several cases in which the form of the notice was similarly not in issue (*see Garage Mgt. Corp. v Chase Manhattan Bank*, 22 AD3d 432 [2005]; *Ryan v Fleet Bank of N.Y.*, 286 AD2d 923 [2001]; *Vantrel Enters. v Citibank*, 272 AD2d 609, 610 [2000]; *New Gold Equities Corp. v Chemical Bank*, 251 AD2d 91 [1998]; *Weiner v Sprint Mtge. Bankers Corp.*, 235 AD2d 472, 474 [1997]). The only case in which the form of notice was actually in issue, *Ryan v Fleet Bank of N.Y.* (*supra*), simply relies on the prior "authority" and does not present any independent basis for its holding.

Written notice was also at issue in *New Gold Equities Corp. v Chemical Bank* (*supra*). In that case, the Appellate Division, First Department, relied on an unreported decision from the Supreme Court, Westchester County, which, in turn, cited a Georgia case, *Indemnity Ins. Co. of N. Am. v Fulton Natl. Bank* (108 Ga App 356, 133 SE2d 43 [1963]), that imposed a writing requirement on the notice of a forged check. As the Georgia decision explains, however, the relevant Georgia statute explicitly required written notice (108 Ga App at 357, 133 SE2d at 44). The Supreme Court, in turn, relied for the writing requirement

on a 1963 decision of the United States District Court for the Southern District of New York, in which the court held that notice under section 43 of the Negotiable Instruments Law was not given until the customer provided the bank with "a list which gave the details of each check bearing forged indorsements" (*see American Bldg. Maintenance Co. of Cal. Inc. v Federation Bank & Trust Co.*, 213 F Supp 412, 416 [1963]). Although the language of that provision bears some similarity to that of UCC 4-406 (4), the Negotiable Instruments Law was repealed at the time of the adoption of the UCC (*see* UCC 13-105), which, as has been stated, makes no mention of a "list" or any writing requirement.

Significantly, the UCC generally has not been read as requiring written notice of a forged check. The general rule, consistency with which is important (*see Monreal v Fleet Bank*, 95 NY2d 204, 209 [2000]), appears to be that written notice, while preferable, is not required (*see* 6C Anderson, Uniform Commercial Code § 4-406:114, at 496 [3d ed 2000], citing *Duralite Co. v New Jersey Bank & Trust Co.*, 97 NJ Super 48, 52, 234 A2d 247, 249-250 [1967]; *see also Trammell v Farmers & Merchants Bank of Summerville*, 170 Ga App 347, 348, 317 SE2d 323, 324-325 [1984]). Rather, the critical element of the notice is not its form, but the specificity with which it identifies the allegedly fraudulent items (*see New Props., Inc. v Newpower*, 2006 WL 2632310, 2006 Mich App LEXIS 2668 [2006]; *Watseka First Natl. Bank v Horney*, 292 Ill App 3d 933, 939, 686 NE2d 1175, 1179-1180 [1997]; *First Place Computers, Inc. v Security Natl. Bank of Omaha*, 251 Neb 485, 490, 558 NW2d 57, 61 [1997]; *Knight Communications, Inc. v Boatmen's Natl. Bank of St. Louis*, 805 SW2d 199, 203 [Miss 1991]; *American Home Assur. Co. v Scarsdale Natl. Bank & Trust Co.*, 96 Misc 2d 715, 717 [1978]).

We are, of course, obligated to follow the determinations of the Court of Appeals. In order for a statement of the law made by the Court of Appeals to have such binding precedential effect, however, it must have addressed an issue that was before that Court (*see Adirondack Trust Co. v Farone*, 245 AD2d 840, 842 [1997]; *People v Bourne*, 139 AD2d 210, 216 [1988]; *Monroe v City of New York*, 67 AD2d 89, 103 [1979]; *cf. Art Masters Assoc. v United Parcel Serv.*, 77 NY2d 200, 208 [1990]; *Matter of Knight-Ridder Broadcasting v Greenberg*, 70 NY2d 151, 160 [1987]). "Principles are not established by what was said, but by what was decided, and what was said is not evidence of what

was decided, unless it relates directly to the question presented for decision" (*People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs.*, 174 NY 417, 447 [1903], *affd* 199 US 1 [1905]). Dicta, while not without importance, is not required to be followed (*see Race v Krum*, 222 NY 410, 414 [1918]; *Colonial City Traction Co. v Kingston City R.R. Co.*, 154 NY 493, 495 [1897]).

Viewed in this light, we do not read the Court of Appeals' reference to "written" notice in *Woods* to be controlling with respect to the question before us. The issue of "written" notice was simply not presented in that case. Since a contrary rule is consistent with both the language of the statute and UCC jurisprudence generally, we conclude that written notice of the unauthorized signature is not required to satisfy the requirements of UCC 4-406 (4).

Accordingly, the Supreme Court erred in granting the defendant's motion for summary judgment in this case. Furthermore, since the defendant's opposition to the plaintiff's cross motion for leave to amend the complaint to add a sixth cause of action, asserting a claim based on UCC 4-401, was predicated on the absence of written notice, the Supreme Court improvidently exercised its discretion in denying leave to amend to assert that claim.

The Supreme Court providently exercised its discretion, however, in denying the plaintiff's cross motion for leave to amend the complaint insofar as it sought to add a claim for commercial bad faith. The proposed complaint in that regard fails to allege any wrongdoing, the defendant's knowledge thereof or complicity therewith, or that the alleged party to the forgery scheme who worked for the defendant had not, "while ostensibly acting for [the defendant], in fact totally abandon[ed] the [defendant's] interests and act[ed] entirely for [her] own or others' purposes" (*Prudential-Bache Sec. v Citibank*, 73 NY2d 263, 276 [1989]). In the absence of such allegations, the proposed amended pleading is palpably insufficient to state a cause of action for commercial bad faith (*see Prudential-Bache Sec. v Citibank, supra* at 275-277; *Peck v Chase Manhattan Bank*, 190 AD2d 547, 548-549 [1993]), and leave to add the claim by amendment was thus properly denied (*see Jacobowitz v Leak*, 19 AD3d 453, 455 [2005]).

Thus, the order is modified by (1) deleting the provision thereof granting the defendant's motion for summary judgment dismissing the complaint and substituting therefor a provision denying the motion and (2) deleting the provision thereof deny-

ing that branch of the plaintiff's cross motion which was for leave to amend the complaint to add a sixth cause of action pursuant to UCC 4-401 and substituting therefor a provision granting that branch of the cross motion.

CRANE, J.P., MASTRO and RIVERA, JJ., concur.

Ordered that the order is modified, on the law, by (1) deleting the provision thereof granting the defendant's motion for summary judgment dismissing the complaint and substituting therefor a provision denying the motion and (2) deleting the provision thereof denying that branch of the plaintiff's cross motion which was for leave to amend the complaint to add a sixth cause of action pursuant to UCC 4-401 and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.