Matter of Baby D.K.N. (2025 NY Slip Op 25202)

[*1]

Matter of Baby D.K.N.

2025 NY Slip Op 25202

Decided on September 3, 2025

Supreme Court, Kings County

Cohen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 3, 2025
Supreme Court, Kings County

In the Matter of a Parentage Proceeding Concerning Baby D.K.N., A Child Conceived as a Result of Assisted Reproduction E.K., E.D., R.N., Petitioners

Index No. 550167/2025

Brian K. Esser, Esq., Law Office of Brian Esser PLLC, 41 Flatbush Avenue, Suite 1, Brooklyn, NY 11217
Melissa B. Brisman, Esq. Law Office of Melissa B. Brisman, 31 Washington Square West, New York, NY 10011
Janene Oleaga, Esq., Oleaga Law LLC, 254 Commercial Street, Ste. 245, Portland, ME 04101

Caroline Piela Cohen, J.

Introduction:
The instant Petition is brought by three separate individuals, E.D., E.K. and R.N. (collectively "the Petitioners"), all of whom seek to be adjudicated the lawful parents of Baby D.K.N. Baby D.K.N. was conceived through Assisted Reproductive Technology ("ART") with the physical participation of all three Petitioners. The Petition is brought pursuant to New York State Family Court Act ("FCA"), Article 5-C ("the Article"). The Article provides an avenue for individuals to establish parentage for children conceived through gestational surrogacy agreements or ART. To this Court's knowledge, this is a case of first impression, as this is the first Petition brought under the Article by three Petitioners. However, despite the unique facts of this case, this Petition is fundamentally similar to the scores of other Petitions that were already adjudicated under the Article. In concert with the Court's oral decision of May 13, 2025, the Court grants the Petition in full after textual analysis of the Article and review of relevant case law as applied to the facts at bar. 
Factual and Procedural Background:
This matter was commenced by filing of the Parentage Petition ("the Petition") on [*2]January 24, 2025, and seeks a judgment and declaration of parentage pursuant to the Article.
The Petitioners reside together as a family unit and jointly planned to conceive a child through ART. Before the Petition was filed, the Petitioners commenced reproductive care from Dr. Briana Rudick, a licensed physician and board-certified Reproductive Endocrinologist. Thereafter, Petitioner E.D. provided the gamete egg, Petitioner R.N. provided the gamete sperm, and Petitioner E.K. gestated the child. Petitioners provided the Court with the statutorily required certification from Dr. Rudick, M.D., who attested to the means by which Petitioner E.K. became pregnant.
At the time this matter was commenced, Petitioner E.K. was already pregnant with Baby D.K.N. On XXXX XX, 2025, during the pendency of this matter, Petitioner E.K. gave birth to the child.
Additionally, Petitioner E.D. is married to non-party M.R., who also lives with Petitioners. M.R. stated that they [FN1]
do not "intend" to be a parent as defined by the Article and do not wish to be included in these proceedings. However, because M.R. is married to E.D., M.R. is arguably a necessary party to the Petition as per the Article. See Fam. Ct. Act § 581-305; see also NY C.P.L.R. § 1001(a). On April 29, 2025, Petitioners moved this Court by Amended Notice of Motion seeking to waive joinder of M.R. pursuant to CPLR § 1001(b). Therein, Petitioners stated that they support M.R.'s position and confirmed that they are the only "intended" parents of the child. See Fam. Ct. Act § 581-305; NY C.P.L.R. § 1001(b).
The Court held a hearing on May 13, 2025 on the Motion to Waive Joinder and on the underlying Petition. The Court first heard testimony from all three Petitioners as well as non-party M.R. on the Motion to Waive Joinder. Petitioners testified that they planned to bring a child into the world through ART with the intention that they would raise the child together in their shared home. The Petitioners testified that they are the only intended parents of Baby D.K.N. M.R. testified that they do not intend to be a parent to Baby D.K.N. M.R. testified that they supported Petitioner E.D.'s decision to conceive a child through ART and then parent that child with the Petitioners. The Court granted Petitioners' Motion to Waive Joinder of M.R., finding the factors set forth in the statute weighed in favor of allowing the action to proceed without M.R. as a party.[FN2]
 
Subsequently, and for the reasons set forth below, the Court granted the underlying Petition, declaring Petitioners the legal parents of the child.
Statutory and Common Law Authority:
The Article was first enacted in 2021 and revised in 2024 and 2025 by the New York State Legislature. The purpose of the Article is to legally establish a child's relationship to their parent or parents when the child is conceived either through ART or gestational surrogacy. The Article requires a streamlined factual and legal analysis. Case in point, the Article requires the Court to grant a Petition on papers and without hearing if all necessary documentation is provided. See Fam. Ct. Act § 581-202(c). Notably, the Article does not call for a best interest analysis, as is required by other statutes when adjudicating custodial or visitation rights. 
The Article does not specify the gender or maximum number of intended parents. In relevant part, § 581-102(k) broadly defines an intended parent as "an individual who manifests the intent to be legally bound as the parent of a child" who is conceived through ART. See Fam. Ct. Act § 581-102(k). Similarly, Subsection (l) of the same section broadly defines a parent as a person with a "parent-child relationship created or recognized under this act or other law." Fam. Ct. Act § 581-102(l). Lastly, the Article defines a participant in the proceeding as "an individual who either provides a gamete that is used in assisted reproduction [or] is an intended parent." See Fam. Ct. Act § 581-102(m). Sections 581-201(a) and (c) state that any "participant," as defined by the prior section, can commence a Petition which seeks a judgment of parentage of a child conceived through ART. See Fam. Ct. Act §§ 581-201(a) and (c).
Sections 581-202(a) and (b) establish basic procedural requirements, namely that the intended parent, parents or child reside in New York State and that the Petition is verified. See Fam. Ct. Act §§ 581-202(a) and (b).
Section 581-202(c) sets forth the substantive requirements that must be met for a Petition to be granted. The section requires "a statement from the gestating intended parent that the gestating intended parent became pregnant as a result of assisted reproduction," and "a statement from the gestating intended parent and [singular][FN3]
non-gestating intended parent that the [singular] non-gestating intended parent consented to assisted reproduction pursuant to section 581-304 of this article." See Fam. Ct. Act § 581-202(c)(2) and (3). Additionally, it requires "proof of any donor's donative intent." Fam. Ct. Act § 581-202(c)(4).
Where parties do not meet the requirements set forth in § 581-202(c), such as where there is more than one non-gestating intended parent and/or where there is no donative intent, § 581-202(f) provides an alternative means of adjudicating parentage proceedings by referring intended parents to § 581-303. See Fam. Ct. Act § 581-202(f); Fam. Ct. Act § 581-303. Section 581-303 provides that anyone "who provides gametes for, or who consents to, assisted reproduction with the intent to be a parent of the child with the consent of the gestating parent as provided in section 581-304 of this part, is a parent of the resulting child for all legal purposes." Fam. Ct. Act § 581-303(a). Section 581-304 requires that unmarried petitioners' intent be memorialized, stating that "where the intended parent who gives birth to a child by means of assisted reproduction is not a spouse, the consent to the assisted reproduction must be in a record in such [*3]a manner as to indicate the mutual agreement of the intended parents to conceive and parent a child together." Fam. Ct. Act § 581-304. Conversely, "[w]here the intended parent who gives birth to a child by means of assisted reproduction is a spouse, the consent of both spouses to the assisted reproduction is presumed and neither spouse may challenge the parentage of the child, except as provided in section 581-305 of this part." Fam. Ct. Act § 581-304(a). In § 581-305, the Article further discusses the marital presumption without the specificity of § 581-304. Section 581-305 states generally that "[n]either spouse may challenge the marital presumption of parentage of a child created by assisted reproduction during the marriage unless the court finds by clear and convincing evidence that one spouse used assisted reproduction without the knowledge and consent of the other spouse." Fam. Ct. Act § 581-305(a).
After the aforementioned requirements are met, § 581-202(g) states that the Court is directed to issue a judgment of parentage, declaring that the Petitioner or Petitioners are the child's legal parent or parents, and ordering the Parent or Parents to immediately "assume responsibility for the maintenance and support of the child." Fam. Ct. Act § 581-202(g). The section further requires the child's birth certificate to be amended to reflect the parties listed on the judgment of parentage. See id.
As this is a case of first impression involving a relatively new law, all prior caselaw regarding the legal rights of more than two parents provides a guide for this Court and is not dispositive. Most other relevant caselaw involves the interpretation of the New York State Domestic Relations Law ("DRL"), which "covers the custody and wages of children; the Uniform Child Custody Jurisdiction and Enforcement Act; the appointment of guardians; adoption," and does not cover parentage after the use of ART.[FN4]
Dom. Rel. Law Preamble, Scope of Statute. Through Dom. Rel. Law § 70, over the past decade, New York State Courts increasingly supported custody and visitation for three parents.
In 2016, in Matter of Brooke S.B. v Elizabeth A.C.C., the New York State Court of Appeals held that "where a partner shows by clear and convincing evidence that the parties agreed to conceive a child and to raise the child together, the non-biological, non-adoptive partner has standing to seek visitation and custody under Domestic Relations Law §70." 28 NY3d 1, 14 (2016). On its face, Brooke S.B. is not applicable to the facts at bar, as it involved only two parents and Dom. Rel. Law § 70. However, in a footnote, the New York State Court of Appeals stated that Dom. Rel. Law § 70 limits custody and visitation rights to two parents. See Matter of Brooke S.B., 28 NY3d at 18 n.3. The Court stated that "by [the use of the term] 'either,' the plain language of Domestic Relations Law § 70 clearly limits a child to two parents, and no more than two, at any given time." Id. (citing Dom. Rel. Law § 70). 
In Dawn M. v. Michael M., the New York State Supreme Court took a more expansive view of Dom. Rel. Law § 70. 47 N.Y.S.3d 898 (NY Sup. Ct. Suffolk Cty. Mar. 8, 2017). In Dawn M., the Court determined that any party, regardless if there are already two custodial parents, can "apply to the court for custody." Id. at 901. The success of a Petition for custody or visitation is based "solely upon what is for the best interest of the child, and what will promote [*4]his welfare and happiness." Id. Through this holding, the Court purposefully did not take a textual approach in determining how many people could have custody or visitation of a child and granted "tri-custody" to the plaintiff after assessing that the same is in the child's best interest.[FN5]
Id. at 902. 
In making this determination, the Court also clarified Brooke S.B.'s holding, stating that it "only addressed the ability of a person who was not a biological or adoptive parent to establish standing as a parent to Petition for custody and visitation," and did not address the limiting footnote. Id. at 902. The Court stated that in Brooke S.B., the Court of Appeals championed using a best interest analysis, indicating that "the ultimate determination of whether to grant those rights rests in the sound discretion of trial courts in determining the best interests of the child." Id. Lastly, the Court found that "tri-custody is the logical evolution of the Court of Appeals' decision in Brooke S.B., and the passage of the Marriage Equality Act and Domestic Relations Law § 10-a which permits same-sex couples to marry in New York." Id. at 902-03.
In Matter of David S. v. Samantha G., the New York County Family Court again addressed Dom. Rel. Law § 70's ability to grant custody and visitation to a party where a child already has two legally recognized parents. See 74 N.Y.S.3d 730 (NY Cty. Fam. Ct. Apr. 10, 2018). The Court analyzed the facts at bar [FN6]
through the framework set by Dom. Rel. Law § 70 and further interpreted by Brooke S.B. Therein, the Court took an even more expansive view of Dom. Rel. Law § 70 and held that foremost, the statute "must be read to effectuate the welfare and best interests of children, particularly those who are being raised in a nontraditional family structure." Id. at 734. The Court applied this best interest analysis and found that on the facts presented, the third parent had standing to seek custody or visitation of the child. 
The Court also highlighted the fact that footnote three of Brooke S.B., which limited custody and visitation to only two parents, was "contrary to the spirit of the [underlying] decision," which advocated using the best interest analysis. Id. at 734 n.2; see also Brooke S.B., 28 NY3d at 18 n.3. The Court also highlighted that the aforementioned footnote is only dicta, and therefore "is not required to be followed." Matter of David S., 74 N.Y.S.3d at 734 n.2 (citing Robinson Motor Xpress, Inc. v. HSBC Bank, USA, 826 N.Y.S.2d 350, 357 (NY App. Div. 2d Dep't 2006)). Interestingly, the Court clarified that it "is not, however, granting Mr. T. an order of parentage," as a Petition was not filed seeking that right. Matter of David S., 74 N.Y.S.3d at 735. The Court stated "that there is not currently any New York statute which grants legal parentage to three parties, nor is there any New York case law precedent for such a determination."[FN7]
Id. at 736. In making this decision, the Court stated that with the use of ART [*5]by same-sex couples, "it is worth noting that the situation before the court—where three parties are involved in raising a child—is likely to recur." Id. at 734.
Analysis:
A simple application of the Article to the facts of this case requires a granting of the Petition. The Court will first address some foundational definitions under the Article. The Court finds that each Petitioner constitutes an "intended parent" pursuant to § 581-102(k), as each Petitioner manifested their intent to be legally bound as the parent of the child resulting from assisted reproduction. See Fam. Ct. Act § 581-102(k). Moreover, each Petitioner also constitutes a "Participant" pursuant to § 581-102(m), as E.D., R.N. and E.K. are intended parents, as previously defined, and E.D. and R.N. provided gametes used in the assisted reproduction. See Fam. Ct. Act § 581-102(m).
Family Court Act §§ 581-201(a) and (c) allow a Petition for a judgment of parentage of a child conceived through ART to be initiated by a "Participant." Fam. Ct. Act §§ 581-201(a) and (c). As established above, because the Petitioners here are "Participants" as defined by the Article, the Court finds the Petitioners have standing to bring and maintain this action. Further, the Court finds that the requirements of §§ 581-202(a) and (b) are met insofar as the intended parents reside together in Kings County, New York and the Petition was verified by each of the Petitioners. See Fam. Ct. Act §§ 581-202(a) and (b).
The Court's analysis continues to § 581-202(c) for a determination of parentage. See Fam. Ct. Act §§ 581-202(c). The Court finds that it cannot adjudicate the Petitioners to be the parents of the child pursuant to § 581-202(c) because not all of the requirements under this subsection are met. Specifically, § 581-202(c)(3) refers to a singular non-gestating intended parent and requires a statement that such singular non-gestating intended parent consented to the assisted reproduction. See Fam. Ct. Act § 581-202(c)(3). In the case at bar, there are two non-gestating intended parents, so it does not fit squarely within § 581-202(c)(3).
Additionally, the requirement under § 581-202(c)(4) is not met, as it requires "proof of any donor's donative intent." Fam. Ct. Act § 581-202(c)(4). Here, there are no donors as identified by the Article, which defines the same as "an individual who does not intend to be a parent who produces gametes and provides them to another person for use in assisted reproduction." Fam. Ct. Act § 581-102(d). The individuals who provided the gametes in this assisted reproduction have manifested their intent to be parents of the child. As such, there are no donors with donative intent.
As this case is not covered by § 581-202(c), § 581-202(f) requires the Court to adjudicate the parentage of the child in accordance with Part 3 of the Article. See Fam. Ct. Act § 581-202(f). Accordingly, the Court shifts its analysis to § 581-303, which provides that anyone "who provides gametes for, or who consents to, assisted reproduction with the intent to be a parent of the child with the consent of the gestating parent as provided in § 581-304 of this part, is a parent of the resulting child for all legal purposes." Fam. Ct. Act § 581-303(a). 
As required by § 581-304, E.K., E.D. and R.N. all memorialized their mutual agreement to conceive Baby D.K.N. through assisted reproduction with the intent to be a parent of the child in affidavits. See Fam. Ct. Act § 581-304. As such, the Court finds that each of the Petitioners squarely fit into the plain language of § 581-303. See Fam. Ct. Act § 581-303. Consequently, the Court adjudicates the Petitioners as legal parents of the child and issues a judgment of parentage in their favor.
Lastly, the marital presumption of parentage attaches to M.R., as the Article states that where an intended parent is a spouse, such as E.D., neither spouse, such as M.R., may challenge the marital presumption of a child born through ART during a marriage. See Fam. Ct. Act § 581-305(a). The marital presumption of parentage indeed exists, and any implications that may flow from such presumption are understood by the Petitioners and M.R. who were fully allocated on the same. The legislature laid out a narrow series of exceptions to the marital presumption, none of which apply.[FN8]

Despite the fact that the marital presumption attaches to M.R., the Court granted their motion to waive joinder as to M.R. As guided by CPLR § 1001(b), the Court found that M.R. is not prejudiced by not joining the action, as they stated that they do not wish to be adjudicated the parent of Baby D.K.N. Moreover, the Petitioners or Baby D.K.N. are not prejudiced as they can pursue rights they have by virtue of the marital presumption at a later date regardless of M.R.'s non-participation in this proceeding. Accordingly, the Court takes no position on M.R.'s status as a parent of Baby D.K.N. at this time.
Conclusion:
In each case that comes before this Court, we are charged with the heavy responsibility of evaluating parties' legal issues and related facts; this Court is further responsible for analyzing applicable legislation, and interpreting it based on the text itself, through prior decisions by sister courts, and other related statutes. This Court takes each of the aforementioned steps without regard to political and societal pressure. 
Accordingly, after careful textual analysis, study of related decisions and statutes and assessment of the facts, it is hereby ORDERED the Court grants this Petition in full and an Order of Parentage will follow as necessary. Baby D.K.N.'s birth certificate will be amended as needed to reflect the three parent's names listed in alphabetical order.
Dated: September 3, 2025
Hon. Caroline Piela Cohen, J.S.C.

Footnotes

Footnote 1:M.R. utilizes they/them pronouns.

Footnote 2:The CPLR requires that a person be joined in an action "who ought to be [a party] if complete relief is to be accorded between the persons who are parties to the action" or "who might be inequitably affected by a judgment in the action[.]" NY C.P.L.R. § 1001(a). The Court initially found that M.R. is a necessary person to be joined pursuant to CPLR § 1001(a). However, subsection (b) allows the action to proceed without M.R. being made a party after consideration of "1. whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder; 2. the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined; 3. whether and by whom prejudice might have been avoided or may in the future be avoided; 4. the feasibility of a protective provision by order of the court or in the judgment; and 5. whether an effective judgment may be rendered in the absence of the person who is not joined." NY C.P.L.R. § 1001(b).

Footnote 3:The word "singular" was added by the Court for clarity.

Footnote 4:The DRL also addresses "genetic surrogate parenting agreements," as defined by that statute. Dom. Rel. Law § 121(2). However, the DRL only addresses such agreements to say that they are deemed "void and unenforceable" as they are "contrary to the public policy." Dom. Rel. Law § 122; see also Dom. Rel. Law §123.

Footnote 5:The three parents planned to conceive and raise the child together and did so for the first 18 months of the child's life. During this time, all three parents lived together. After plaintiff and defendant's romantic relationship ended, the plaintiff moved into a home shared by the third party and child. The plaintiff is not physically related to the subject child, nor is an adoptive parent. Id. at 900-01.

Footnote 6: Three individuals agreed to and executed a preconception plan, and thereafter jointly raised the child. Id. at 734-35.

Footnote 7:Notably, the Court in David S. wrote this in 2018, three years before the Article was enacted.

Footnote 8:The exceptions are that "one spouse used assisted reproduction without the knowledge and consent of the other spouse," the spouses are living separately per a separation decree, separation judgement or written agreement, or the spouses lived separately for three or more years. Fam. Ct. Act §§ 581-305(a) and (b). Because M.R. knew and consented to E.D.'s participation in ART, and because M.R. and E.D. lived together with the other Petitioners, none of the exceptions in § 581-305 apply. See Fam. Ct. Act §§ 581-305(a) and (b).