Pirnie v. Purdy.

---•◦•---

PIRNIE, executor, &c. *vs.* PURDY and others.

A testator, by his will, gave several specific and general legacies to various individuals, including a specific bequest to Mary P. V. of the sole use and occupation of his homestead, and of the furniture therein, &c. for the term of three years, and at the expiration of that time the executors were directed to sell the real and personal property and out of the avails to pay the said Mary P. V. a legacy of $500 which the testator willed and bequeathed to her. The residue the testator ordered to be divided " among the *legatees* in like ratio as their legacies." Then, after bequeathing some small specific articles, he added this clause, " I order my two lots of ground, lying, &c. and also my outdoor personal property, to be sold at my death; the avails of which, with my bank stock and notes of hand, I trust will pay my *legacies*. If not, I order it to be duly apportioned among the *legatees* according to the amount bequeathed," &c. *Held*, that Mary P. V. was entitled to share in the distribution of the residue, as one of the legatees.

THIS was an appeal by the defendant Mary P. Varian from a judgment entered at a special term of the court. The complaint was filed by the plaintiff, as executor of Samuel Haskell deceased, for a construction of the last will and testament of the deceased. The judge, at special term, decided that the appellant, having had the use of the testator's dwelling house and out buildings, and lands thereto attached, and the furniture, for the period and in the manner specified in the will, and the executor having, after the expiration of that period, sold the said real and personal property, and paid to her, out of the avails thereof, the sum of $500, she was not entitled to any further or other share of the residue of said avails. Also that she was not entitled to any share or portion of the surplus arising from

the sale of the lots of land lying between Drake's lane and Weyman avenue, together with the bank stock and notes of hand of the testator, and remaining in the executor's hands after paying the other legacies.

*S. E. Lyon,* for the appellant. The testator gives money legacies of various amounts to several persons, and then, after reciting his great obligations to the defendant, Mary P. Varian, gives to her, for the term of three years from the time of his death, the sole use and occupancy of his dwelling house and out-buildings, and also the use of all the furniture in his dwelling house, and the family stores. At the expiration of three years, he directs his executors to sell the real estate and personal estate, and out of the avails to pay the aforesaid Mary P. a *legacy* of $500. Then proceeding to dispose of the residue, he says : " The residue I order to be divided among the legatees in like ratio as their legacies." Mary P. claims her share of the residue as one of " the legatees," because, 1. The bequest to the defendant Varian is a demonstrative legacy, with all the incidents of a general legacy, and is in one sense, only, specific, viz., that against all other general legatees it has a precedency of payment out of the fund produced by the sale of the homestead. (2 *Wms. on Executors,* 995, 1003. 1 *Roper on Wills,* 384. 1 *Roper on Legacies,* 210. *Roberts* v. *Pocock,* 4 *Ves.* 150. *Walton* v. *Walton,* 7 *John. Ch. Rep.* 258, 263.) 2. If this is a general legacy in its incidents, then Mary P. Varian is entitled to her share of the residue, as she is one of " *the legatees*" in the will ; unless the court supply the words " *other than the said Mary P. Varian* " before the word " legatees," in order to exclude her from the benefits of the residuary clause. This would be in violation of the manifest intention of the testator, and of the well settled rules of law governing the construction of wills. The courts are bound to give effect to every word of a will, without change or rejection, provided an effect can be given to it not inconsistent with the general intent of the whole will. (3 *Vesey,* 105. 6 *id.* 102. 2 *B. & A.* 448.) 3. There is nothing uncertain or repugnant in the residuary clause ; the words " *the legatees*"

are intelligible and descriptive of a *class.* The testator had already described his bequest to the defendant, by using in her case alone the technical word "*legacy.*" The interpolation of the words "*other than the said Mary P. Varian,*" would be to exclude from the *class* of legatees the only one in the will to whom the testator had given that particular name. (*See Lord Eldon's opinion in Smith* v. *Pybus,* 9 *Ves.* 575.) 4. The rule under which words are supplied or rejected, has never gone further than to declare that if the general intention can be collected, on any one particular object, expressions militating with that may be rejected, if plainly appearing to have been inserted by mistake. (*Sims* v. *Doughty,* 5 *Ves.* 246. *Mellish* v. *Mellish,* 4 *id.* 45.) It is analogous to the principle that parol evidence is never admissible where there is no ambiguity to call for an explanation, or where the will may operate according to the words, without any such foreign help. (2 *Roper on Wills,* 32.) 5. There is no reason why a legatee, for whom a testator has shown a particular solicitude and interest, should be excluded by legal interpretation ; but, on the contrary thereof, such a person being prominently in the mind of the testator would be excluded in words from his residuary bounty, if such were his intention. 6. The testator divides his estate into *two funds,* and his legatees into *two classes,* as to time of payment; one fund is to be appropriated to the payment of the legacies payable immediately, and the other at the expiration of three years. He evidently drew his will without professional aid. The "*Drake's lane*" and "*outdoor property,*" he directs to be sold *immediately* after his death, and distributed among those whom he supposed he had made his immediate legatees, and then provides for the immediate distribution of the residue of that fund. The homestead he directs to be sold *three years* afterwards, and provides for the distribution of the residue of that fund among those who should then be the legatees under his will, as he understood its effect, which evidently was, that Mary P. Varian did not come within the denomination of a legatee until her legacy was payable.

Pirnie *v.* Purdy.

*J. E. Burrill, Jun.* for the plaintiff. I. The real and personal estate referred to, means the real and personal property, the use of which was given to Mary P. Varian for three years, as above stated. II. Mary P. Varian was entitled to receive from the avails of the said property the sum of $500 and no more, and the residue was to be divided among the other legatees in proportion to their legacies. (1.) The legatees in this clause of the will referred to, are the same persons intended by the expression, " the legatees," in the succeeding clause of the will. (2.) The word *legatees* was intended to denote general legatees, and not *specific* legatees. (*Henwood* v. *Overend,* 1 *Meriv.* 23.) (3.) The sum given to the appellant was a specific legacy, and the proceeds of this particular property is the only fund for its payment, because the fund consists of *real and personal* property, and the testator appropriated all the residue of his property to the payment of other legatees. (*Newbold* v. *Roadknight,* 1 *Russ. & M.* 677. *Arnold* v. *Arnold,* 2 *Dickens,* 646. *Spurway* v. *Glynn,* 9 *Vesey,* 483. *Dicken* v. *Edward,* 4 *Hare,* 274. *Gettens* v. *Steele,* 1 *Swans.* 24. *Lawten* v. *Hudson,* 1 *Bro. C. C.* 58. *Creed* v. *Creed,* 11 *Clark & Fin.* 510. *Hancox* v. *Abbey,* 11 *Ves.* 179.) (4.) This fund was not the *fund* provided by the testator for the payment of legacies. This fund is not to be raised until after the expiration of three years from the testator's death, whereas " the legacies" are to be paid within the ordinary period, out of the fund provided for that purpose. (1 *Meriv.* 23.) (5.) The testator evidently designed the proceeds of the two lots of ground, bank stock and notes of hand, as the fund for the payment of " the legacies," because he says, he thinks such proceeds will be sufficient for that purpose, and if insufficient the legacies are to be abated *pro rata.* (6.) If the appellant be one of the legatees under the clause at folio 16, she is also one of the legatees under the clause at folio 17, and yet it is plain that if the fund provided at folio 16 had failed, she would not be entitled to participate in the fund at folio 17. (7.) The testator evidently contemplated that the fund provided at folio 16 would be in every event sufficient to pay the appellant, because he does not pro-

vide for a deficiency, but does for a *surplus.* (8.) He directs the executor, *out of the avails* of the property, at folio 16, to pay the appellant $500, and after she is paid, then the residue is to be divided amongst *the* legatees, not *any* legatees, but *the* legatees, evidently meaning *the other* persons named in the will to whom he had made bequests. (9.) By the legatees, the testator means " *the other legatees.*"

III. The testator makes this provision : I order my two lots of ground to be sold at *my death,* the avails of which, with my bank stock and notes at hand, I trust will pay my legacies ; if not, I order it to be duly apportioned among the legatees according to the amount bequeathed ; and if it should overrun, let it also be divided in the same ratio. (1.) It was the intention of the testator that those only should be entitled to share in the surplus who would have been entitled to share it if insufficient. (*Sholl* v. *Sholl,* 5 *Barb.* 312.) (2.) The testator intended the fund to be raised under this clause to be applied to the payment of those legacies which were to be paid at his death. (3.) He evidently knew that the dwelling house and furniture mentioned at folio 16 would be more than sufficient to pay the gift to Mary P. Varian, and disposed of this fund on the supposition that she was already provided for. (4.) The legacy given to Mary P. Varian was to be paid out of the proceeds of the sale of the dwelling house and furniture, and out of no other fund. (*See authorities under preceding point.*)

*By the Court,* MITCHELL, P. J. Appeal from a judgment rendered at a special term, denying to Mary P. Varian any part of certain residuary estate of Samuel Haskell, the testator. The testator had no relatives to whom he was inclined to give any great part of his estate, but bestowed his affections more particularly on others, whom he had regarded in the place of children, or who had rendered him kind offices during his life. He states one object of his will to be, " to meet those contingencies which the law would not always meet ;" and he gives to Eliza Ann Purdy, his large family bible and other articles, valuable as family tokens, and also the sum of $500, which in

Pirnie *v.* Purdy.

case of her death was to go to her children, and speaks of her as one "whom he had brought up from her infancy and until her marriage." He also gives to a son of her's $200, and to each of her other sons $50. He gives to his only surviving brother $200, " on his embarking for Liverpool," and to his five children $500 between them, but not to be sent to them by their father. He next gives to three nieces in Ohio, $500; to three nieces in Boston, $600 ; to another niece in Boston, $400 ; to two nephews, a note which he held against one of them for $300, and to the brother $50 ; and then gives to Samuel Haskell Stokum, " who was born in my house and at his baptism took my name," $400. Then follows the bequest to Mary P. Varian. It is as follows : " To Mary P. Varian, who has for *many* years been an inmate in my family, and in consideration of her *faith-ful* services and *kind* attentions to my *family and myself in sickness* and in health, and by her frequent watching and *fatigue* has greatly impaired her constitution, I give and *be-queath*, for the term of three years from the time of my death, the sole use and occupancy of my dwelling house and out-build-ings with the land thereto belonging ; and also the use of all the furniture in said dwelling house, excepting those articles here-tofore designated, and which are to be given up immediately after my death. The family stores, which shall be on hand at the time of my death, I also give to the said Mary P., and at the expiration of three years, or thereabouts, from the time of my death, I order and direct my executors to sell both real and personal estate, and out of the avails to pay the aforesaid Mary P. a *legacy* of $500, lawful money, which I will and *bequeath* unto her. The residue I order to be divided among the legatees in like ratio as their legacies." Then, after giving some small specific articles, he adds a clause as follows : " I order my two lots of ground lying between what are called Drake's lane and the Weyman avenue, and also my outdoor per-sonal property, to be sold *at my death ;.* the avails of which, with my bank stock and notes of hand, I trust will pay my *legacies ;* if not, I order it to be duly apportioned among the

*legatees* according to the amount bequeathed; and if it should overrun, let it also be divided in the same ratio."

To no one does the testator profess to be under any obligation but to the appellant, Mary P. Varian; she had been the inmate in his family, and had rendered faithful services and kind attentions to himself and his family, in sickness and in health, and had, by her frequent watchings and fatigue, greatly impaired her constitution. No one else did he recognize as having a claim on him for kindness or services rendered to him or his. His attachment he showed to two, one of whom had been brought up by him, and the other had assumed his name; but he states no act on *their* part calling for peculiar favor from him. His only surviving brother, and the children of that brother, " *he knows afar off*" only: the brother is to be paid the small legacy of $200, only on his leaving the country, " on his embarking for Liverpool." The testator also gives to Mary P. Varian $500, a larger sum than to any one other individual, except Mrs. Purdy, whom he had brought up from her infancy, and also gives to her the use of his dwelling and its furniture, and of the out-buildings with the land attached, which was probably of more value than the specific articles given to Mrs. Purdy. He thus shows that Mrs. Varian was intended to be favored by him above others; and makes it proper when there is a doubt as to the meaning of the words used by him, that that interpretation should be given to them which would most favor her, and thus carry out what was his general intent. He had given to Mrs Purdy $500 and some specific articles, and to S. H. Stokum $400, and to a niece $400, and to other relatives smaller sums. Why should he wish the residue of the proceeds of sales of his dwelling and furniture to increase their legacies and not to increase Mrs. Varian's ? Certainly not from any affection or interest which he had exhibited to them, over Mrs. Varian, for to none had he manifested an obligation, except to her. His intention, then, as gathered from the will, would be that Mrs. Varian should also partake with them in that residue. Otherwise she is the only exception, and she the one to whom he owed the most, and who " by her frequent watchings and fatigues had

*greatly* impaired her constitution." The construction favorable to her is the only one that can be creditable to the testator, or consistent with the motives which he has expressed. The liberal interpretation of the will leads to the same result. After directing carefully that out of the proceeds of sale "a *legacy* of $500" be paid to Mrs. Varian, and in effect to be paid before any other legacy is paid, thus showing still his preference to her, he adds : "The residue I order to be divided among *the legatees* in like ratio as their *legacies.*" He had not in any previous part of the will called the sum given to any one a legacy, or the person a legatee, until he gave the $500 to Mrs. Varian, and that alone he expressly calls a *legacy.* When, then, he directs the residue " to be divided among the legatees in like ratio as their legacies," the liberal interpretation also requires that Mrs. Varian should be regarded as a legatee, and the previous bequest to her as a legacy, and that she should, as a legatee, share in the division of the residue. To exclude her, would require the insertion of a word which would alter the meaning of the sentence as it stands, viz. " other" before legatees ; to include her, leaves to the words their proper meaning. " Among the legateees," is the same as " among all the legatees" or " among the said legatees." Mrs. Varian's bequest was in fact, and by the *previous* nomenclature adopted by the testator, a legacy.

The argument against her claim is rested partly on the fact, that in a subsequent clause of the will other real and personal estate is directed to be sold at the testator's death, and the proceeds to be apportioned among the legatees according to their respective legacies ; and it is said that, as this distribution was to be made immediately on the death of the testator, and Mrs. Varian was to be paid her legacy of $500 only at the end of three years after his death, she could not share in this last distribution, and so, it was argued, was not a legatee within the meaning of the testator. It is not so clear that the testator did not intend Mrs. Varian to share in this last division, as to make that inference a basis for an argument against her in another part of the will. What he means in this last clause is uncer-

tain, and if she is excluded it is not because the words used would exclude her, or show an intention to exclude her, or show that the testator used the word legatees always as excluding her, but because her legacy not being payable until three years *after* the death of the testator, it is inferred that she was not to share with other legatees in that which was to be paid *on* the death of the testator. The same argument does not apply to that which was to be paid to other legatees at the same time that she was to be paid her legacy. This clause from which she is excluded might have more the appearance of an indication of the testator's meaning of the word "legatees," if it had preceded the other clause; but even then it would be a forced construction, when the testator had expressly described the gift to Mrs. Varian as a legacy, and that too immediately before the clause in which he directs the residue to be divided among the legatees in like ratio as their legacies. The decree should be so modified as to allow Mrs. Varian to share in this residue, and to have the costs of the appeal paid out of the fund.

[NEW YORK GENERAL TERM, November 6, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]