THIRD DIVISION
March 9, 2011

No. 1-10-1887

| | | |
|---|---|---|
| ROBERT J. NAPLETON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| GREAT LAKES BANK, N.A., | ) | Honorable |
| | ) | Anthony L. Burrell, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Murphy and Steele concurred in the judgment and opinion.

**OPINION**

This case arises out of a complaint filed by plaintiff, Robert J. Napleton, seeking reimbursement of $7,500 that defendant, Great Lakes Bank, N.A. (Great Lakes), debited from his checking account when it honored a forged check written on plaintiff's account. The bank refused plaintiff's request for reimbursement on the grounds that he failed to timely notify the bank of the forgery as required by its deposit account agreement (Account Agreement). In response to plaintiff's complaint alleging breach of contract and conversion, defendant filed a motion to dismiss pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS

1-10-1887

5/2-619.1 (West 2008)) (Code), which the trial court granted. On appeal, plaintiff contends that the trial court erred in granting defendant's section 2-619 motion to dismiss because defendant failed to present evidence that it suffered a loss as a result of his failure to provide timely notice of the forgery, as required by section 4-406(d)(1) of the Illinois Uniform Commercial Code (UCC) (810 ILCS 5/4-406(d)(1) (West 2008)). Defendant contends that section 4-406(d)(1) does not apply in this case because it is superseded by the terms of the Account Agreement. For the reasons set forth below, we affirm.

## I. BACKGROUND

The facts in this case are not in dispute. Plaintiff has maintained a personal checking account with defendant bank since 1981. On or about October 31, 2007, an unknown person stole a personal check from plaintiff, made it payable to a third-party company in the amount of $7,500, and presented it to defendant bank for payment. The bank paid the check and debited $7,500 from plaintiff's checking account. Although the forged check appeared on plaintiff's November 2007 monthly bank statement (Monthly Statement), plaintiff did not become aware of the forgery and the payment until March 2008, at which time he notified the bank and asked it to credit his account in the amount of $7,500. On or about May 8, 2008, the bank informed plaintiff that it would not credit his account because plaintiff had failed to timely notify the bank of the forgery pursuant to the terms of the Account Agreement, which provides, in relevant part:

"If your account is a Checking, Interest Checking, Money Market, or Statement Savings account, we will provide you with a periodic statement showing the account activity. You must examine your statement with 'reasonable promptness.' If you discover

-2-

(or reasonably should have discovered) any unauthorized signatures, alterations, or other discrepancies you must notify us of the relevant facts within 30 days after we mailed or otherwise made the statement available to you. If you fail to notify us, you will have no claim against us. If you do not receive a statement from us because you have failed to claim it or have supplied us with an incorrect address, we may stop sending your statements until you specifically make written request that we resume sending your statements and you supply us with a proper address."

The Monthly Statements sent to plaintiff also mentioned the 30-day notification requirement stating, "Please examine this statement at once. If no error is reported in 30 days, the account will be considered correct. If any discrepancies are noted, please contact our Customer Service Center ***."

Defendant contended that because plaintiff did not notify the bank of the forgery until May 2008, more than 30 days after the November 2007 Monthly Statement was mailed to him, he had no claim against the bank.

Plaintiff filed a complaint against defendant on October 2, 2009, alleging conversion and breach of contract. On November 19, 2009, defendant filed a combined motion pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2008)), seeking dismissal of plaintiff's complaint. Pursuant to section 2-615 (735 ILCS 5/2-615 (West 2008)), defendant argued that plaintiff's complaint failed to state a claim based on conversion because it did not allege that defendant paid any of plaintiff's funds to itself, as required for a conversion claim, but instead alleged that defendant made an unauthorized payment to an entity that is not a party to this action.

1-10-1887

In support of its prayer for involuntary dismissal pursuant to section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2008)), the motion asserted that plaintiff's failure to notify defendant of the allegedly unauthorized check within 30 days of receiving his Monthly Statement precludes plaintiff's claim for conversion or breach of contract.

On January 11, 2010, plaintiff filed a response to defendant's motion to dismiss arguing that (1) defendant converted the $7,500 for its own use, even if only for a short time, in order to pay the third-party payee; and (2) the bank failed to prove that it suffered a loss as a result of plaintiff's failure to timely notify it of the forgery pursuant to section 4-406(d)(1) of the UCC (810 ILCS 5/4-406(d)(1) (West 2008)).[1] On February 24, 2010, after a hearing, the trial court granted defendant's motion to dismiss. On March 25, 2010, plaintiff filed a motion to reconsider, which the trial court denied on June 4, 2010. This timely appeal followed.

## II. ANALYSIS

This court reviews an order of dismissal pursuant to section 2-619(a)(9) *de novo*, accepting as true all well-pled facts contained in the complaint and in any uncontradicted affidavits attached to the motion. *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App.3d 611 (2010). A motion to dismiss under section 2-619(a)(9) asserts that plaintiff's claims against the defendant are "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008); see also *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009). The question on review is "whether the existence of a genuine issue

---

[1] Plaintiff also filed a motion for summary judgment, which the trial court denied and which is not raised in this appeal.

-4-

of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law."*1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 615 (quoting *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 110 (1999), quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)).

The relationship between a bank and its customer is governed by the Illinois Uniform Commercial Code. The relevant section of the UCC is section 4-406 entitled "Customer's duty to discover and report unauthorized signature or alteration." 810 ILCS 5/4-406 (West 2008). The purpose of the section is to clearly define the bank customer's responsibility to examine its statement of account from the bank and promptly discover and report any unauthorized payments. *Empire Moving & Warehouse Corp. v. Hyde Park Bank & Trust Co.*, 43 Ill. App. 3d 991, 996 (1976). In relevant part, section 4-406 states:

"(c) If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

(d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection (c), the customer is precluded from asserting against the bank:

1-10-1887

> (1) the customer's unauthorized signature or any alteration on the item, *if the bank also proves that it suffered a loss by reason of the failure*; and
>
> (2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank." (Emphasis added.) 810 ILCS 5/4-406(c), (d) (West 2008).

Pursuant to section 4-103(a) the parties may, with some limitations, vary the effect of the UCC.   Section 4-103(a) provides:

> "The effect *** of this Article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure.  However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.  810 ILCS 5/4-103(a) (West 2008).

See also *Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Savings Bank*, 235 Ill. App. 3d 978, 982 (1992) ("the parties may vary the effect of the Code by agreement").

Here, the parties agree that pursuant to the terms of the Account Agreement, the plaintiff's duty to "promptly notify" the bank of any unauthorized charges was modified to mean 30 days from the date the Monthly Statement was mailed to plaintiff.  Although we did not find

any Illinois cases directly addressing this issue, decisions from other jurisdictions indicate that such an alteration in the notification period is clearly permissible. See, *e.g.*, *Peters v. Riggs National Bank, N.A.*, 942 A.2d 1163 (D.C. 2008) (holding that bank could shorten the period in which a customer must notify the bank of an unauthorized transaction from one year to six months); *American Airlines Employees Federal Credit Union v. Martin*, 29 S.W.3d 86 (Tex. 2000) (holding that 60-day notice provision in deposit agreement was enforceable).

Plaintiff concedes that by notifying the bank four months after he received his November Monthly Statement he failed to comply with this duty to promptly notify defendant. Plaintiff asserts, however, that the trial court erred in dismissing his complaint because defendant failed to present evidence showing that it suffered a loss as a result of the untimely notification. According to plaintiff, under section 4-406(d)(1) of the UCC, in order for a bank to assert a customer's untimely notification as a defense to the customer's request for a refund, the bank must prove that it suffered a loss as a result of that untimely notification. Plaintiff contends that because defendant failed to allege any facts to support an argument that it suffered an injury and the trial court did not hold an evidentiary hearing or make any factual determination on that issue, controverted issues of fact remain, and dismissal under section 2-619(a)(9) of the Code was not warranted.

Defendant does not dispute the meaning of section 4-406(d)(1) of the UCC, but asserts that it does not control the rights of the parties in this case because they contractually agreed, pursuant to the Account Agreement, that plaintiff would have no claim for reimbursement of an unauthorized check unless he notified the bank within 30 days of receiving his statement. Defendant contends that the Account Agreement and the Monthly Statements are dispositive of

1-10-1887

an account holder's rights to seek reimbursement from the bank and because, as plaintiff

acknowledges, he failed to notify the bank within 30 days, he has no claim against the bank.

The parties assert that there is no controlling Illinois case law on the issue raised in this

appeal and both assert that *Reliance Insurance Co. v. Bank of America National Trust & Savings

Ass'n*, No. 99 C 3366 (N.D. Ill. Jan. 25, 2001), an unpublished federal district court case

interpreting Illinois law, supports their argument. Supreme Court Rule 23(e) provides that

unpublished orders are not precedential and has long prohibited their citation by any party

" 'except to support contentions of double jeopardy, *res judicata,* collateral estoppel[,] or law of

the case.' " *Philpott v. Board of Trustees of City of Charleston Firefighters' Pension Fund*, 397

Ill. App. 3d 369, 374 (2010) (quoting Ill. S. Ct. R. 23 eff. May 30, 2008)). Although Rule 23 was

recently amended, effective January 1, 2011, the prohibition on citing to unpublished dispositions

was retained in the amended rule, which states that "[a]n order entered under subpart (b) or (c),"

referring to a written order or summary order, "is not precedential and may not be cited by any

party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of

the case." Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2011). The decision in *Reliance* does not fall into any

of these categories; therefore, the parties should not have cited it in their briefs and we will not

consider it in this opinion. However, the court in *Reliance* cited an opinion from the Minnesota

Supreme Court, *Stowell v. Cloquet Co-op Credit Union*, 557 N.W.2d 567 (Minn. 1997), which

we find persuasive in addressing the issue raised in this appeal.

In *Stowell*, the plaintiff filed a complaint against the defendant credit union to recover

approximately $22,000 the defendant paid over a 10-month period on checks from the plaintiff's

account that were forged by the plaintiff's neighbor. The trial court held that the draft withdrawal agreement, which plaintiff signed when he opened his account and which required him to notify the credit union of any errors in his account statement within 20 days of the mailing of the statement, was manifestly unreasonable and refused to apply the agreement to bar the plaintiff's claim. *Stowell*, 557 N.W.2d at 568. Thereafter, following a trial, a jury found the credit union liable for the forged checks that were paid in the first four months, the plaintiff responsible for forgeries in the subsequent five months and both parties responsible for the forgeries in the remaining one month. *Id*. at 570. The court of appeals affirmed, but the Minnesota Supreme Court reversed, finding that the 20-day notice provision of the draft withdrawal agreement was not manifestly unreasonable and should be enforced in the absence of proof of a lack of ordinary care by the credit union in paying the forged items. *Id*. In so holding, the court cited to several opinions from New York courts that have similarly held that agreements modifying the time limit prescribed by section 4-406 are valid and provide a condition precedent to a bank's liability, so long as the bank does not attempt to disclaim its responsibility to act in good faith or with ordinary care. *Id*. at 573 n. 3.

Similarly, in this case, the parties agreed that the plaintiff had 30 days from the date his Monthly Statement was made available to him to notify defendant of any unauthorized transactions on his account. The trial court's finding that plaintiff's failure to notify defendant of the forgery until four months later precluded him from bringing a complaint against defendant is consistent with the holding in *Stowell* as well as the numerous decisions from New York.

Further, although it is true, as the parties contend, that there is a dearth of Illinois case law

directly addressing the question raised by plaintiff in this appeal, this court did address a similar issue in *Euro Motors, Inc. v. Southwest Financial Bank & Trust Co.*, 297 Ill. App. 3d 246, 696 N.E.2d 711 (1998), and reached a conclusion consistent with the *Stowell* court holding. In *Euro Motors*, a case of first impression in Illinois, a bank customer sued its bank for breach of contract and conversion after the bank wrongfully paid two checks that had unauthorized signatures. The trial court granted the bank's motion for summary judgment and on appeal this court found that the customer's claim was barred pursuant to section 4-406(f) of the UCC because the customer failed to discover and report the unauthorized signatures within one year after the statement of account was made available to the customer. Section 4-406(f) provides that, "Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer *** discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration." 810 ILCS 5/4-406(f) (West 2008). This court concluded that the statutory period in section 4-406(f) "requires the customer to notify the bank of an unauthorized signature or alteration within a year in order to *preserve the right* to bring suit." (Emphasis in original.) *Euro Motors*, 297 Ill. App. 3d at 254. Because plaintiff failed to meet this "statutory prerequisite to suit," this court affirmed the trial court's grant of summary judgment.

As this court noted in *Euro Motors*, 297 Ill. App. 3d at 251, "many other jurisdictions have come to the same conclusion," holding that the statutory period within which a bank customer must discover and report an unauthorized signature or alteration establishes a

precondition to a customer's lawsuit against a bank. See, *e.g.*, *Borowski v. Firstar Bank Milwaukee, N.A.*, 579 N.W.2d 247, 249 (Wis. Ct. App. 1998) (holding that statutory period within which customer must discover and report unauthorized signature or alteration establishes a precondition to a customer's lawsuit against bank); *American Airlines Employees Federal Credit Union v. Martin*, 29 S.W.3d 86 (Tex. 2000) (holding that in order for a customer to assert a claim of an unauthorized signature (absent any allegation that the bank did not act in good faith), a customer must comply with the duty to discover and report the unauthorized signature within a reasonable time or within the time frame provided for within the agreement). Other jurisdictions have also held that even where the notification period is dramatically shortened by agreement between the parties to 60 or even 14 days, the failure of the customer to notify the bank of the unauthorized transactions precludes the customer's claim. See, *e.g.*, *American Airlines Employees Federal Credit Union,* 29 S.W.3d 86 (holding that customer's failure to notify defendant bank of unauthorized transaction within 60 days as agreed to by the parties precluded customer from pursuing claim against bank); *Borowski*, 579 N.W.2d at 251 (customer's failure to review statements and checks within 14 days barred action against bank for negligently paying forged checks).

As with section 4-406(f), sections 4-406(c) and (d)(1) of the UCC impose a statutory prerequisite to suit, providing that if a customer fails to "promptly notify" a bank of an unauthorized payment, the customer is precluded from asserting a claim against the bank. Here, the parties agreed pursuant to the Account Agreement that "promptly notify" would mean notification within 30 days after the Monthly Statement was mailed or otherwise made the

statement available to plaintiff. Consistent with this court's holding in *Euro Motors*, because plaintiff failed to meet the statutory notification period, he failed to preserve his right to bring suit against the bank. Therefore, the trial court did not err in granting defendant's motion to dismiss.

During oral argument, plaintiff's counsel asserted that the case should be remanded to the trial court for a determination as to whether the bank's conduct amounted to a lack of good faith or a failure to exercise ordinary care in violation of section 4-103(a) of the UCC, which permits the parties to vary the terms of the UCC by agreement but provides that the parties "cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care ." 810 ILCS 5/4-103(a) (West 2008). We agree with plaintiff that evidence showing that the bank acted in bad faith in trying to disclaim liability for paying unauthorized items or failed to exercise ordinary care might preclude defendant from raising plaintiff's failure to timely notify it of the forgery as a defense. See, *e.g.*, *Falk v. Northern Trust Co.*, 327 Ill. App. 3d 101, 109 (2001) (holding that customer's failure to provide statutory notice to bank of unauthorized withdrawal did not protect bank from suit when it acted in bad faith). However, plaintiff failed to present this issue in his initial complaint or in his briefs to this court and therefore, it is forfeited on appeal.

Plaintiff also contends that if the terms of the Account Agreement are interpreted broadly to preclude any claim by a customer who fails to timely notify the bank of an unauthorized transaction, other provisions of the UCC, including sections 4-406(d), (f) and perhaps (e),[2] would

---

[2]Sections 4-406(e) and (f) of the UCC provide as follows:

"(e) If subsection (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the

be rendered meaningless. It is well settled, plaintiff asserts, that a statute should be construed so that no portion of it is rendered meaningless or superfluous. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). Plaintiff argues that defendant's position that the terms of the Account Agreement control would impermissibly render portions of the UCC meaningless and place an unintended burden on him while relieving defendant of a statutorily mandated requirement. Plaintiff further contends that section 4-406 of the UCC must be read in its entirety because section 4-406(c)(1) does not provide a remedy for a customer's failure to timely notify and, therefore, section 4-406(d)(1) must be analyzed and applied if defendant is to have a remedy. We disagree.

Illinois courts have held that "[i]t is a fundamental principle of banking law that the relationship between a bank and its depositor is created and regulated by the express or implied

customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection (d) does not apply.

(f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If there is a preclusion under this subsection, the payor pank may not recover for breach of warranty under Section 4-208 [810 ILCS 5/4-208 (West 2008)] with respect to the unauthorized signature or alteration to which the preclusion applies." 810 ILCS 5/4-406(e), (f) (West 2008).

contracts between them." *Symanski v. First National Bank of Danville*, 242 Ill. App. 3d 391, 394 (1993) (citing *Bieze v. Coca*, 54 Ill. App. 3d 7, 15 (1977)). Here, the parties agreed pursuant to the terms of the Account Agreement that plaintiff was required to timely discover any unauthorized transactions and notify the bank in order to preserve his claim. Our finding that plaintiff's failure to abide by the terms of that agreement precludes his claim is consistent with our holding in *Euro Motors* and case law in the majority of other jurisdictions, as well as the public policy underlying the UCC "in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations in favor of reasonable time limitations on the responsibility of banks for payment of forged, altered or unauthorized items." *Euro Motors*, 297 Ill. App. 3d at 253 (citing *Knight Communications, Inc. v. Boatmen's National Bank*, 805 S.W.2d 199, 202 (Mo. App. 1991)). Therefore, because plaintiff failed to notify the bank of the forgery within 30 days, the trial court did not err in finding that plaintiff had no claim against defendant.

## III. CONCLUSION

For the reasons set forth above, we affirm the trial court order granting defendant's motion to dismiss.

Affirmed.