# Illinois Official Reports

## Appellate Court

---

### *Aliaga Medical Center, S.C. v. Harris Bank N.A.*,
### 2014 IL App (1st) 133645

---

| | |
|---|---|
| Appellate Court Caption | ALIAGA MEDICAL CENTER, S.C., Plaintiff-Appellant, v. HARRIS BANK N.A., a/k/a BMO Harris Bank, N.A., Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-13-3645 |
| Filed | November 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed plaintiff's complaint alleging that defendant bank improperly honored a check with preprinted language that the check was "void after 90 days," since plaintiff's claim was barred by the parties' written deposit account agreements and several provisions of the Uniform Commercial Code, including plaintiff's agreement to order defendant in person, online or in writing to stop payment by giving defendant the account number, the check number, the date of the check, the payee's name and the amount by a certain deadline and pay a stop payment fee, and absent compliance with these requirements, defendant could honor the check; furthermore, plaintiff did not file suit within one year from the date the statement was made available. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-14567; the Hon. Margaret Ann Brennan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Burch & Associates, of Chicago (David Delgado and Dale Smirl, of counsel), for appellant.

Akerman LLP, of Chicago (Eric J. Gribbin and Julia R. Lissner, of counsel), for appellee.

Panel

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Hoffman and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    This case concerns whether a bank properly honored a check bearing preprinted language stating it was "void after 90 days." It illustrates that bank customers run tremendous risks if they do not reconcile their bank statements in a timely manner. In its first amended complaint, plaintiff Aliaga Medical Center (plaintiff or Aliaga) sought reimbursement of $50,000 that defendant Harris Bank N.A., a/k/a BMO Harris Bank, N.A. (Harris Bank), improperly debited from its checking account when it honored a check containing "void after 90 days" language. Harris Bank moved to dismiss Aliaga's complaint under section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)), because the claim was barred by the terms of the parties' written deposit account agreements and several provisions of the Uniform Commercial Code (UCC) (815 ILCS 5/1-101 *et seq.* (West 2012)). The circuit court dismissed Aliaga's first amended complaint, and we affirm.

¶ 2                                    BACKGROUND
¶ 3    The facts are essentially uncontested. Aliaga first opened a business checking account with Harris Bank in December 2003. Upon opening the account, Aliaga received the "Harris Bank Handbook for Personal and Business Deposit Accounts," which was effective September 1, 2003. Aliaga acknowledged receipt of the agreement and agreed that it would govern its account with Harris Bank. The introduction section of the agreement confirmed that Aliaga "agree[s] to the terms of this Agreement when [Aliaga] sign[s] [Harris Bank's] account opening form or signature card, make[s] deposits or withdrawals, or leave[s] funds on deposit."[1] In November 2010, Aliaga opened an additional business account and received a "Harris Handbook for Personal and Business Deposit Accounts," which was effective

---

[1]The September 1, 2003, agreement was replaced by amended versions of the "Harris Handbook for Personal and Business Deposit Accounts," which became effective September 6, 2008. Aliaga, however, has acknowledged that the terms relevant to this dispute did not change in the 2008 amended account agreement.

September 18, 2010. Aliaga acknowledged receipt of this agreement and agreed that it would govern its accounts with Harris Bank.[2]

¶ 4    The agreement required that if Aliaga wanted to stop payment on a check it had written, the following requirements would apply:

"If you do not want us to pay a check you have written, you can order us to stop payment. You can notify us in person, by Harris Telephone Banking (1-888-340-2265), by Harris Online Banking or by mail to Harris, Attn.: Support, P.O. Box 94033, Palatine, IL 60094-4033. For business accounts, you can contact our Business Banking Service Center at 1-888-489-2265. Your stop payment order must include your account number, the number and date of the check, the name of the payee, and the amount. We must receive your stop payment order before our stop payment cut-off time, which is 10 a.m. Central Time (C.T.) on the next Business Day after the check is presented to us for payment. We will accept a stop payment order from any account owner regardless of who signed the check. Your stop payment order will be effective for six months. If you want the stop payment order to continue after six months, you must renew it. A stop payment order will not be effective on a check which we have already paid or certified. There is a stop payment fee as shown in the *Services Guide*."

Furthermore, under the agreement, Harris Bank specifically "reserve[d] [its] right to pay *** a stale check."[3]

¶ 5    The agreement contained a number of other relevant notification provisions, including:

"You must also notify us of any other account problem, including an erroneous statement entry *** or improper charges within 60 days of the date we send or make your statement available to you.

* * *

We shall not be liable for errors *** unless you have given us the required notice. You agree that you will not commence any legal action or proceeding against us regarding any such error *** unless you do so within one year of the date we send or make available to you the statement *** in question."

¶ 6    On July 10, 2010, Dr. Federico Aliaga, the plaintiff's president, issued a check in the amount of $50,000 (the check), payable to his wife, whom he was divorcing. The face of the check included the statement "void after 90 days" immediately above the signature line. Harris Bank honored the check on December 30, 2010. Aliaga never placed a stop payment order on the check and, in fact, never communicated with Harris about the check anytime between July 10, 2010, and December 30, 2010.

¶ 7    In January 2011, Harris Bank sent and made available to Aliaga its December 2010 checking account statement, which showed that Harris Bank had honored the check on December 30, 2010. Aliaga, however, did not notify Harris Bank of the improper check payment within the 60-day notification period delineated in the parties' agreement. Additionally, Aliaga did not initiate this lawsuit within one year of the date Harris Bank sent or made available the December 2010 statement. Instead, Aliaga waited until October or

---

[2]We refer to the various agreements collectively as the "agreement."

[3]A stale check is one that is "more than six months old."

November 2012, nearly two years after the December 2010 statement was made available, before disputing the check with Harris.

¶ 8      Harris moved to dismiss the amended complaint. The trial court granted the motion, and this appeal followed.

¶ 9                             ANALYSIS

¶ 10      "A motion to dismiss under section 2-619(a) of the Code *** admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action." *Kean v. Wal-Mart Stores, Inc*., 235 Ill. 2d 351, 361 (2009). This court reviews an order of dismissal "accepting as true all well-pled facts contained in the complaint and in any uncontradicted affidavits attached to that motion." *Napleton v. Great Lakes Bank, N.A*., 408 Ill. App. 3d 448, 450 (2011). The question on review of a dismissal under section 2-619 is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) *Id*. at 450-51. "In conducting *de novo* review, the appellate court will examine the complaint and all evidentiary material before the trial court at the time of entry of the [dismissal] order ***." *Vala v. Pacific Insurance Co.*, 296 Ill. App. 3d 968, 970 (1988). After a defendant satisfies its burden of going forward on a section 2-619(a) motion to dismiss, "the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is unfounded as a matter of law or requires the resolution of an essential element of material fact before it is proven." *Barrett v. Fonorow*, 343 Ill. App. 3d 1184, 1189 (2003).

¶ 11      Aliaga does not dispute the applicability of the various contractual provisions on which Harris relies, but argues that the use of the printed word "void" on the check and the passage of time somehow took it outside the scope of the account agreement. We disagree. Like the proverbial bird that is identified as a duck because of its distinctive characteristics, the document in question was a check. It was in the standard form of a check, contained standard check language, bore the bank's name, routing number and the account number set in electronically readable magnetic ink character recognition (MICR) type, and was otherwise presented, paid, and accounted for as a check in the normal course of the account's regular operation. We cannot agree with Aliaga's characterization, as it would create unworkable burdens on financial institutions in this era of ubiquitous electronic check processing. The agreement between the parties governs.

¶ 12                           A. Stop Payment Provision

¶ 13      Harris had the right to pay the check despite the "void after 90 days" language because Aliaga failed to properly stop payment of the check. Under the parties' agreement, if Aliaga did not want Harris Bank to pay a check it had written, then Aliaga had to comply with certain requirements. In particular, Aliaga must order Harris Bank either in person, online, or in writing to stop payment of a check by including an "account number, the number and date of the check, the name of the payee, and the amount" by a certain deadline and must also pay a stop payment fee. Here, Aliaga acknowledges that it did not comply with the stop payment provisions of the agreement. Without the required stop payment order, Harris Bank maintained its right to honor the check. Therefore, the check's "void" language did not

suffice to stop payment because the agreement contains no exception for such language on checks.

¶ 14 Aliaga's contention that it was not required to comply with the stop payment terms of the parties' agreement is without merit. Aliaga claims that under a UCC provision (810 ILCS 5/4-403(a) (West 2012)), it was only required to stop payment "in a time and manner that gives the bank a reasonable opportunity to comply" and that its notation on the check "certainly achieves this." However, Aliaga's contention is without merit for several reasons. First, the UCC permits that "[t]he effect of [its] provisions *** may be varied by agreement." 810 ILCS 5/4-103(a) (West 2012). Here, the parties entered into an agreement, which included specific notice and fee requirements for stopping payment of a check. Those agreed-upon requirements superseded the UCC provision in question.

¶ 15 In *Napleton*, the appellate court upheld the same principle in a case where the plaintiff bank customer failed to comply with a notice provision set forth in the customer's account agreement with the defendant bank. *Napleton*, 408 Ill. App. 3d at 449, 456. The court found that the customer's account agreement with the bank properly modified the terms of the UCC concerning the customer's duty to notify the bank and, as a result, the court affirmed dismissal of the customer's actions against the bank. *Id*. at 456.

¶ 16 Additionally, the Official Comment to section 4-103 explains: "In view of the technical complexity of the field of bank collections, the enormous number of items handled by banks, the certainty that there will be variations from the normal in each day's work in each bank, the certainty of changing conditions and the possibility of developing improved methods of collection to speed the process, it would be unwise to freeze present methods of operation by mandatory statutory rules." 810 ILCS Ann. 5/4-103, Uniform Commercial Code Comment 1, at 400 (Smith-Hurd 2014). Indeed, " '[i]t is a fundamental principle of banking law that the relationship between a bank and its depositor is created and regulated by the express *** contracts between them.' " *Napleton*, 408 Ill. App. 3d at 456 (quoting *Symanski v. First National Bank of Danville*, 242 Ill. App. 3d 391, 394 (1993)). Accordingly, absent Aliaga's compliance with the notice and fee requirements of the stop payment provision in the agreement, Harris Bank had a right to pay the check.

¶ 17 Furthermore, even if Aliaga is correct that the stop payment provision of the agreement was neither exclusive nor meant to override the UCC, the "void" notation was ineffective because it did not comply with section 4-403(a) of the UCC by providing notice "at a time and in a manner that affords the bank a reasonable opportunity to act on it." 810 ILCS 5/4-403(a) (West 2012). Here, Aliaga admitted that it did not provide the check bearing the language "void" directly to Harris Bank; it was first transmitted to the payee of the check. Thus, Aliaga neither knew when the check would be received at Harris Bank nor the means by which it would be processed once it was received. This type of notation, alone, is not a reasonable means by which to direct a bank to stop payment on a check. As commentators on the UCC have stated:

> "In light of the manner in which checks are processed, banks need to have the right to pay checks no matter how old the check is. This is because banks process checks by feeding the checks through a computer that reads only the MICR-encoded line. The only information that the computer can use in determining whether or not to pay a check is the MICR-encoded information. The MICR-encoded information does not include the date the check was written. As a result, a prohibition on paying a

check more than six months old would require that a bank visually inspect every check to determine whether the check is stale." 7 Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 4-404:6 [Rev.], at 464 (3d ed. 2013).

6A William D. Hawkland *et al.*, Uniform Commercial Code Series § 4-404:2 (2013). Accordingly, we do not view the "void" notation on the check as constituting a stop payment order under section 4-403(a).

¶ 18    Furthermore, under the parties' agreement, Harris Bank specifically "reserve[d] the right to pay *** a stale check." Aliaga's contention that this provision is inapplicable because the check "was not *** stale *** [but instead] it was *void*" is without merit. (Emphasis in original.) The effect of a bank customer writing "void after 90 days" on a check has been described as making the check stale after the initial 90-day period. See, *e.g.*, Hawkland, *supra* § 4-404:2 (" 'void after 60 days' should operate to make a check stale after 60 days"); Lawrence, *supra* § 4-404:8 [Rev.], at 466 (same). Aliaga has not cited to any case nor identified any other authority supporting its proposition that there is a substantive difference between stale checks and those marked void after a certain time. Instead, Aliaga attempts to rely on cases that are distinguishable; they fail to apply Illinois law and do not involve a bank's obligation to comply with a similar type of notation on a check. See, *e.g.*, *State v. Gonnelly*, 496 N.W.2d 671 (Wis. Ct. App. 1992) (concerning a Wisconsin statute prohibiting gaming contracts). Accordingly, we hold that, under the terms of the stop payment provision of the parties' agreement, Harris Bank appropriately paid the check.

¶ 19                                B. 60-Day Notice Requirement

¶ 20    Aliaga also failed to comply with its obligation to timely notify Harris Bank of the alleged unauthorized payment of the check within 60 days after Harris Bank made Aliaga's December 2010 statement available to it. Under the agreement, as a prerequisite to bringing this action, Aliaga was required to "notify [Harris Bank] of *** account problem[s], including an erroneous statement entry *** or improper charges within 60 days of the date [Harris Bank] send[s] or make[s] [Aliaga's] statement available to [it]." Aliaga further agreed that "[Harris Bank] shall not be liable for errors *** unless [Aliaga] [has] given [Harris Bank] the required notice."

¶ 21    Here, Aliaga admitted that it did not comply with these terms of the agreement by providing timely notice to Harris Bank within 60 days of the date that it sent, or otherwise made available to Aliaga, the December 2010 statement. Aliaga further conceded that it did not contact Harris Bank about the payment within 60 days of receiving the December 2010 statement. As a result, Aliaga's claim is untimely. *Napleton,* 408 Ill. App. 3d at 456 (bank customer's failure to comply with the terms of agreement with bank and timely notify bank of forged check after monthly statement was mailed to him precluded his claims against the bank).

¶ 22    Aliaga, however, contends that it was not bound by the agreement's 60-day notification requirement. Specifically, Aliaga asserts that the UCC, not the agreement, controls and the agreement does "not specifically address the bank's negligent acceptance of a void check." We reject Aliaga's arguments because they are inconsistent with the UCC, disregard the *Napleton* decision, and ignore the plain and unambiguous terms of the parties' agreement. As we noted above, the UCC permits that "[t]he effect of [its] provisions *** may be varied by agreement." 810 ILCS 5/4-103(a) (West 2012). As such, the *Napleton* court found that it is

"clearly permissible" to enforce a shorter notification timeframe established by a bank customer's account agreement with its bank. *Napleton*, 408 Ill. App. 3d at 452 (holding that "the plaintiff's duty to 'promptly notify' the bank of any unauthorized charges [under the UCC] was modified to mean 30 days from the date the Monthly Statement was mailed to plaintiff").

¶ 23    Aliaga cannot circumvent the clear and unambiguous terms of its agreement with Harris Bank that it "must *** notify [Harris Bank] of *** account problem[s], including an erroneous statement entry *** or improper charges within 60 days of the date [Harris Bank] send[s] or make[s] [Aliaga's] statement available to [it]," and "[Harris Bank] shall not be liable for errors *** unless [Aliaga] [has] given [Harris Bank] the required notice." The alleged unauthorized payment of the check was reflected on the December 2010 statement, which plainly fell within the province of an "account problem," "erroneous statement entry," "improper charge[ ]," and "error" contained within the agreement's provision. Accordingly, Aliaga cannot claim Harris Bank's decision to honor the check was erroneous, given its own failure to comply with the 60-day notice provision set forth in the parties' agreement.

¶ 24                      C. One-Year Notice Requirement

¶ 25    Finally, Aliaga failed to timely commence this lawsuit within one year from the date that Harris Bank sent or made available the December 2010 statement. Under the parties' agreement, Aliaga "agree[d] that [it] [would] not commence any legal action or proceeding against [Harris Bank] regarding any *** error *** unless [Aliaga] [did] so within one year of the date [Aliaga] sen[t] or ma[d]e available to [Aliaga] the statement *** [showing the transaction] in question."

¶ 26    Here, Aliaga admits that it neither complied with these terms of the agreement by commencing this lawsuit within one year of the date that Harris Bank sent or otherwise made available the December 2010 statement nor did it commence this suit within one year of receiving the December 2010 statement. In fact, Aliaga neither notified Harris Bank nor instituted this lawsuit until October or November 2012, nearly two years after the December 2010 statement was made available.

¶ 27    Aliaga claims that the parties' agreement is procedurally unconscionable and that the three-year limitations period set forth in section 4-111 of the UCC should apply instead of the agreement's one-year period. 810 ILCS 5/4-111 (West 2012). The appellate court has explained what constitutes unconscionability:

    "Unconscionability has two components: procedural and substantive. A contract provision is procedurally unconscionable if some impropriety in the formation of the contract leaves a party with no meaningful choice in the matter. A provision is substantively unconscionable if it is overly harsh or one-sided. [Citation.] In order to be unconscionable, a contract provision must be both procedurally and substantively unconscionable." *Kinkel v. Cingular Wireless, LLC*, 357 Ill. App. 3d 556, 562 (2005).

Here, Aliaga has produced no evidence that the agreement was unconscionable. It is common knowledge that account holders should review monthly bank statements to ensure against errors and rectify them promptly. See, *e.g.*, Kenneth W. Clarkson, Roger LeRoy Miller, Gaylord A. Jentz & Frank B. Cross, Business Law 508 (11th ed. 2008); Lawrence J. Gitman, Michael D. Joehnk & Randy Billingsley, Personal Financial Planning 137 (13th ed. 2013); Robert A. Brechner & George Bergeman, Contemporary Mathematics for Business and

Consumers 105 (7th ed. 2014). Thus, there is nothing in the record to suggest that the one-year limitation period or any other provision of the parties' agreement is procedurally unreasonable or "overly harsh or one-sided" so as to be unenforceable in this case. Accordingly, Aliaga's lawsuit is untimely because it filed the suit almost two years after Harris Bank sent or made the December 2010 statement available to Aliaga.

¶ 28                                     CONCLUSION

¶ 29          Accordingly, we affirm the judgment of the circuit court.

¶ 30          Affirmed.